In the Matter of WILLIAM BROWN et al., Respondents, *v.* MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant.

Fourth Department, December 10, 1970.

340

*Schaus & Schaus* (*Bond, Schoeneck & King,* by *John M. Freyer,* of counsel), for appellant.

*Stuart Goldstein* and *Ralph Saft* for respondents.

WITMER, J. Motor Vehicle Accident Indemnification Corporation (MVAIC) appeals from an order of Special Term granting permission to petitioners to add it as a party-defendant in their pending action against one Joseph Demby. It appears that William Brown and Alexander Gadley, petitioners, were pedestrians on December 19, 1968, crossing Oak Street at Genesee Street in the City of Buffalo, when they were struck and injured by a hit-and-run vehicle. The police learned that a witness, Mr. G. T. Hill, saw the accident and pursued the hit-and-run vehicle but lost it. This witness gave the police a description of the vehicle and its license plate number, to wit, a 1962 to 1964 *green Ford,* bearing license number 9 B 8644. The police checked the number and found that it was affixed to a 1964 *blue Chevrolet* owned by Joseph Demby of 98 Fougeron Street, Buffalo.

In June, 1969 petitioners moved in Special Term for permission to sue MVAIC to recover for their injuries. The application was denied without prejudice to renew it after petitioners proceeded against said Demby.

Petitioners then began an action against Demby in which they examined him before trial on December 21, 1969. MVAIC was given notice of such examination before trial, and its attorney appeared and participated therein. Petitioners endeavored to

get the witness to the hit-and-run accident, Mr. G. T. Hill, to make an additional statement in elaboration of his original statement to the police, but he refused to do so.

In January, 1970 petitioners renewed their application to Special Term for permission to sue MVAIC by adding that corporation as a party-defendant to their action against Demby. They attached to their petition and moving papers the prior petition and papers submitted therewith and also the examination before trial of Joseph Demby. The following facts appear, *prima facie,* in those papers as basis for the action of Special Term:

Upon learning from witness Hill the license plate number of the vehicle which he said struck petitioners, the police left a form notice at Demby's Buffalo address, containing no name nor reference to a particular vehicle or accident, but asking the reader to call one of designated telephone numbers of police precincts concerning an accident. Joseph Demby owned the two-family dwelling at 98 Fougeron Street. He had lived there with his first wife since June, 1958. She died in May, 1968. He was a Canadian citizen with a permanent address in the United States, at Buffalo. In October, 1968 he remarried in St. Thomas, Canada and has lived there since that time. He was then 66 years of age. He continued to own the Fougeron Street property and rented it to tenants who paid their rent to him on the first day of each month by money order mailed to him in Canada. Nevertheless, at least once monthly he drove to Buffalo to view said property, to look after it, and although he has no specific recollection of it, he believes that he drove to Buffalo to see his property in December, 1968. Although Fougeron Street runs into Genesee Street, Mr. Demby never traveled on Genesee Street. His daughter lives in Amherst and he described the route he usually took on coming to Buffalo.

No one other than Demby ever drove his said Chevrolet automobile except that his daughter drove it once or twice when he was present. He never had the car repaired or painted and never saw any damage marks on it. He sold the car about December 14, 1969, one week before his examination before trial in petitioners' action against him.

In early January, 1969 Demby received from one of his tenants the paper left by the police, above mentioned, requesting him to call the police, regarding an accident, but since the paper made no reference to him nor to any particular vehicle nor to the date of the accident, and he had had no accident, he threw it away. He went to Florida in February, 1969, and in March in Florida he received a notice from the New York State Depart-

ment of Motor Vehicles of a claim that his car had struck petitioners on December 19, 1968.

MVAIC contends that since Special Term did not swear witnesses, it did not have jurisdiction to grant the order. It bases this argument upon the statute which provides in pertinent part (Insurance Law, § 618, subd. [a]) that " the court may proceed upon such application, in a summary manner, and may make an order permitting the applicant to bring such an action against the corporation when the court is satisfied, upon the hearing of the application, that: * * *

" (5) all reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either that the identity of the motor vehicle and the owner and operator thereof cannot be established * * *."

In our opinion, MVAIC misinterprets the statute. The rights of a " qualified " (uninsured) person, as petitioners are herein, and of MVAIC in opposition are governed by the above-quoted statute and are to be distinguished from the rights of an insured person and the insurer under section 167 of the Insurance Law (see 2 N. Y. PJI 997). With respect to an application by " qualified " persons the statute (Insurance Law, § 618, subd. [a]) does not require the court to conduct a full-blown trial or hearing and take testimony of witnesses in court. It provides that " upon the hearing of the application " the court " in a summary manner " may make an order permitting a petitioner to sue MVAIC (see *Matter of Wallace* v. *MVAIC*, 31 A D 2d 588, 589, affd. 25 N Y 2d 384, 387; *Matter of Smith* v. *MVAIC*, 33 A D 2d 786; and *Milstein* v. *Clark*, 32 A D 2d 935). Only " (i)f Special Term considers itself unable to resolve the issue on the papers alone ", need it conduct a hearing of witnesses thereon (*Milstein* v. *Clark, supra*, p. 936). Thus, Special Term had jurisdiction to grant the order.

MVAIC further contends that even if Special Term had jurisdiction to act herein it was an abuse of discretion for it to grant the order before petitioners had exhausted their rights against Demby. It argues that to require it to come in and defend petitioners' claim at an earlier time will add greatly to its financial burden, necessitating greatly increased legal expenses; and it further points out that petitioners' action against Demby will be binding upon MVAIC in the absence of evidence that petitioners failed to contest their rights fully against Demby or that their conduct was tainted by collusion or fraud (*Matter of Wallace* v. *MVAIC, supra*, p. 388).

Important as are those considerations, we do not find them sufficient to outweigh the reasons for upholding Special Term's

order. MVAIC participated in the examination before trial of Demby in petitioners' action against him. The transcript of that examination was before Special Term, together with the police reports of what the witness G. T. Hill had reported to them, and the allegations by petitioner that Hill refused to make further statement. Upon such record, there is not much likelihood that petitioners will succeed in their action against Demby. The interests of MVAIC must be balanced against those of petitioners and the convenience of the courts. It has been noted that MVAIC is a creature of the statute and has no right not incorporated therein (*Matter of Wallace* v. *MVAIC, supra,* pp. 387–388). It may be assumed that the Legislature was mindful of the above conflicting interests when it enacted the statute. When it is apparent to the court, in the exercise of its judicial discretion, that a qualified person has only a slight chance of holding in a suspected hit-and-run owner or operator, it is sound practice to bring in MVAIC as a party-defendant and have the issue of the suspect's responsibility for the accident settled in that one lawsuit. Otherwise, the court, as a practical matter, will be virtually mandating two trials of that issue. This would not only work a hardship on petitioners in this case but would unnecessarily increase litigation and court congestion.

The Second Department has adopted this principle in *Matter of Smith* v. *MVAIC* (*supra*) and *Milstein* v. *Clark* (*supra*). The First Department case of *Matter of O'Rourke* v. *MVAIC* (29 A D 2d 938) relied upon by MVAIC, is not to the contrary, because there the papers submitted on the application to Special Term were not sufficient to permit the court to act summarily under the statute (and see *Matter of Hamburger* [*MVAIC*], 35 A D 2d 696; cf. *Milstein* v. *Clark, supra*). On the other hand, the papers, including the examination before trial, in the case at bar were clearly sufficient for Special Term to make a summary determination. Of course, Special Term does not finally determine the issue of the suspect's responsibility. Both parties are entitled to have the jury pass upon that issue, that is, whether the suspect is responsible for petitioners' injuries.

We find that Special Term properly exercised its discretion in making the order from which this appeal was taken; and that order should be affirmed.

GOLDMAN, P. J., MARSH, GABRIELLI and HENRY, JJ., concur.

Order unanimously affirmed with costs.