Rabin, J.
We are called upon to construe the will of Godfrey Nurse, made in 1961. Our attention is focused upon Article “ TENTH ” pouring over his residuary estate to an inter vivos charitable trust, created in 1956. Before the testator’s death in 1968, that trust was the subject of a 1967 judgment of the Supreme Court. The issue is whether by that judgment the trust was terminated or merely amended. If terminated, the pour over provision lapses and the residuary estate passes by intestacy to the statutory distributees, including the six appellants, who are testator’s half sisters and issue of predeceased half sisters and half brothers, in the West Indies. If amended, there is compliance with the controlling statute, EPTL 3-3.7, and the residuary passes to the Godfrey Nurse Fund, a charitable entity held and administered by the City of New York.
In pertinent part, EPTL 3-3.7 provides:
“ (a) A testator may by will dispose of or appoint all or any part of his estate to a trustee of a trust, the terms of which are evidenced by a written instrument executed by the testator, # * * provided that such trust instrument is executed and acknowledged by the parties thereto in the manner required by the laws of this state for the recording of á convey *385 anee of real property, prior to or contemporaneously with the execution of the wall, and such trust instrument is identified in such will.
“(b) The testamentary disposition or appointment is valid, even though:
“ (1) The trust instrument is amendable or revocable, or both, provided, however, that the disposition or appointment shall be given effect in accordance with the terms of the trust instrument, including an amendment thereto, as they appear in writing on the date of the testator’s death * * * if the instrument evidencing such amendment is executed and acknowledged in the manner herein provided for executing and acknowledging the instrument which it amends. V-A Mg TV w TV
“ (e) A revocation or termination of the trust before the death of the testator shall cause the disposition or appointment to fail, unless the testator has made an alternative disposition.”
For reasons which follow, we have concluded that the contested article of testator’s will effectively pours over his residuary estate to the Godfrey Nurse Fund, and agree with the Surrogate and the majority in the Appellate Division that the Supreme Court judgment constitutes an amendment to the inter vivos charitable trust originally created in 1956, within the meaning of EPTL 3-3.7 (subd. [b], par. [1]).

The Original Trust Instrument

Godfrey Nurse was a prominent physician in Harlem. On May 23, 1956 he created an irrevocable inter vivos charitable trust named the Godfrey Nurse Fund for the purpose of furnishing and appropriating “ funds necessary for the operation of the Godfrey Nurse Laboratory for Experimental Surgery at Harlem Hospital in the City of New York or its successor or successors.” The corpus of $105,000 was transferred to Thomas B. Dyett and City Bank Farmers Trust Company as trustees with instructions to pay the income and up to $10,000 per a.rmnm of the principal to Harlem Hospital to be used for building, equipping and operating the laboratory. The entire principal was to be paid over to Harlem Hospital at the end of 10 years. The trust instrument provided for termination “ [i]f at any time the said Laboratory shall cease to function as such ” in *386 which case the trustees were to pay over the principal to Harlem Hospital “ for the general purposes of such institution.”

The Will

On June 16, 1961, Dr. Nurse executed his will bequeathing $33,000 to friends, $5,000 to the Harlem branch of the YMOA, $25,000 to the University College of the West Indies, $50,000 to his sister and $25,000 to her son, his nephew. The controversy grows out of the will’s tenth article which reads as follows: ‘ ‘ All the rest, residue and remainder of my property, of whatsoever kind, nature or description and wheresoever the same may be situate, of which I may die seized or possessed, or to which I may be entitled at the time of my death, I give, devise, and bequeath unto City Bank Farmers Trust (Now First National City Trust Company), and Thomas B. Dyett, as Trustees of a certain inter vivos charitable trust made by me as settlor and dated 23rd day of May, 1956, and known as the Godfrey Nurse Fund for the benefit of the Godfrey Nurse Laboratory for Experimental Surgery At Harlem Hospital in the City of New York with direction to the Trustees to apply and distribute the said funds in accordance with the provisions of the said trust.”

The Supreme Court Proceeding and Judgment

For reasons which do not appear, the specific purpose of the trust — the creation of the Godfrey Nurse Laboratory — was never realized. Although some of the interest from the fund was applied with Dr. Nurse’s approval to surgical projects, lectures, scientific travel and scientific activities, by November of 1966 there remained over $117,000 of principal and accumulated income in the hands of the trustees. At that time the trustees petitioned the Supreme Court for a judicial settlement of their account and for instructions “ as to the proper disposi-. tion of the trust funds to the end that the judgment to be entered herein will direct the administration and expenditure of the trust funds in a manner which will most effectually accomplish the general purpose of the trust.”
Although by terms of the trust instrument, the entire principal was to be paid to Harlem Hospital at the end of 10 years, this payment was never made. Bather, on March 31, 1967, the *387 trustees, Dr. Nurse, the Attorney-General[1] and the Corporation Counsel of the City of New York[2] entered into a stipulation providing that after the payment of the trustees’ commissions and other necessary expenses, the funds held by the trustees be “ paid over to the City of New York to constitute a fund known as ‘ The Godfrey Nurse Fund ’ which is to be held and administered upon the following terms and conditions ”. By those terms and conditions, certain directors were named with provision for their successors, and the funds were directed to be spent on the Godfrey Nurse Lectures (to be delivered at Harlem Hospital or a place chosen by the Fund’s directors, the lecturer for each occasion to be a surgeon or distinguished worker in surgery to be chosen by the Director of Surgery at Harlem Hospital), the Godfrey Nurse Research and Travel Grants (for which “ Any Negro engaged specifically in the field of surgery shall be eligible ”) and the Godfrey Nurse Fellowship (“to be granted to a Negro surgeon of pre-eminant distinction ”).
The Supreme Court approved and incorporated the terms of the stipulation into its judgment, entered on May 29, 1967. Godfrey Nurse died 20 months later, on December 22, 1968, without making another will or changing by codicil the bequest of his residuary estate to the inter vivos trust. Thereafter, the will was admitted to probate and Dr. Nurse’s executor commenced the instant proceeding for construction of its tenth article, the residuary clause. The residuary estate amounts to over $250,000. As stated, the issue is whether the Supreme Court judgment, instructing the trustees as to the disposition of the trust fund, constitutes an amendment of the inter vivos trust originally established in 1956, so as to comply with EPTL 3-3.7, or whether it terminated the trust and created some other wholly new entity.
It is apparent from the divided court in the Appellate Division and the dissent within our own court that the contested pour over provision of the will is susceptible of more than one *388 construction. An ambiguity exists regarding the testator’s intention as to the disposition of his residuary estate, particularly in view of the provision of EPTL 3-3.7 (subd. [b], par. [1]) that the trust instrument identified in the will “ shall be given effect in accordance with [its] terms * * * including an amendment thereto, as they appear in writing on the date of the testator’s death ” (emphasis added). On the date of Dr. Nurse’s death, the Godfrey Nurse Fund was not being used for the benefit of the laboratory for experimental surgery at Harlem Hospital noted in the will, but rather for other charitable purposes generally for the benefit of Harlem Hospital and Negro surgeons.
Because of the ambiguity surrounding the testator’s intent, we have been guided by certain general principles and policies of the law, embodied in “ presumptions ” and “ rules of construction ”, in reaching our decision that the pour over provision should be given effect in this case. We note particularly the presumption against intestacy (Matter of Hayes, 263 N. Y. 219, 225; Matter of Dammann, 12 N Y 2d 500, 504) particularly strong as to residuary bequests (Matter of Fabbri, 2 N Y 2d 236, 243) and the long-standing principle of construction that “ where a testator has apparently sought to leave money for a charitable purpose, a liberal construction is to be given to the terms of the will in order to uphold it and- validate the bequest.” (Matter of Potter, 307 N. Y. 504, 517.) These principles, founded in experience and policy, guide our inquiry.
We focus upon the nature and result of the Supreme Court proceeding and are not persuaded by appellants’ contention that the trust was terminated either by its own terms or by the judicial decree. We note that where a lapse of the testator’s residuary bequest would result, termination must be convincingly shown. (Of. 4 Scott, Trusts [3d ed.], 401.2; Bogert, Trusts and Trustees [2d ed.], § 420.) It is clear that the trust’s provision for automatic termination if the laboratory ceased to function was never triggered. The other event which arguably might have ended the trust by its terms — payment of the entire principal to Harlem Hospital at- the end of 10 years — never occurred. Moreover, the judgment incorporating the stipulation makes no mention of termination. The trust was in existence at the time of the stipulation and, upon the Supreme *389 Court’s judgment, it continued in existence, in altered form. The receptacle of the residuary estate — an inter vivos trust known as the Godfrey Nurse Fund — is a continuing entity. By statute, its terms are to be given effect in its amended form.
We agree with the Surrogate that the judgment incorporating the stipulation was an application of the doctrine of cy pres to the inter vivos trust. The original trust agreement provided that at the end of 10 years “ the Trustees shall pay over to [Harlem] Hospital the entire principal of the trust fund then held by them hereunder.” Harlem Hospital would then, as we read the original trust agreement, be required to apply that corpus to the Godfrey Nurse Laboratory contemplated under the trust agreement. The instrument, however, did not provide for a reverter or alternative disposition of the corpus if the laboratory never came into existence. Thus, though the laboratory was unrealized, by the terms of the trust the corpus was nonetheless to pass to Harlem Hospital at the end of 10 years. Since that corpus obviously could not be applied to the laboratory, it could be expended for purposes other than those set forth in the trust agreement. It was to avoid this result that the trustees instituted the Supreme Court proceeding which ended in the judgment amending the trust by approving the application of the fund to its next best use.
In that proceeding, the trustees’ petition, framing the issue before the court, alleged that “ A question may exist as to whether circumstances have so changed since the execution of the trust agreement that it is impracticable to carry out the intention of the testator by a literal compliance with the terms thereof ”. Authority for the proceeding is found in the parallel language of the then-effective subdivision 2 of section 12 of the Personal Property Law (now, with minor changes, EPTL 8-1.1, subd. [c]) which, in relevant part, provided: “ whenever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant or bequest to religious, educational, charitable or benevolent uses as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court *390 shall direct, make an order directing that such gift, grant or bequest shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein; provided, however, that no such order shall be made without the consent of the donor or grantor of the property, if he be living.”
The particular purpose of the trust was altered but the fund was consistently applied to advance the growth of surgery at Harlem Hospital and the position of the Negro in the field of surgery — ■ aims which may be regarded as Dr. Nurse’s “ general charitable intent ” sufficient to warrant the Supreme Court’s exercise of discretion in applying subdivision 2 of section 12 of the Personal Property Law to the trust. (Cf. City Bank Farmers Trust Co. v. Arnold, 283 N. Y. 184, 194; Sherman v. Richmond Hose Co., 230 N. Y. 462, 473.) By its judgment, the Supreme Court, in effect, concluded that the settlor’s intent was not fixed so profoundly on the specific purpose named that the trust was incapable of modification to accomplish similar purposes and to avoid devolution of the entire corpus for the unrestricted use of Harlem Hospital. The settlor was present to voice his intention regarding the next best use for the fund (see Bogert, Trusts and Trustees [2d ed.], § 442) and he consented to the amendment along with all other parties concerned in the original trust agreement. Finally, the alteration of the specific trust purpose received the required imprimatur of the Supreme Court when the stipulation was reduced to judgment. (Personal Property Law, § 12; EPTL 8-1.1, subd. [c] ; Bogert, Trusts and Trustees [2d ed.], § 383; Scott, Trusts [3d ed.], § 367.2; Restatement, Trusts, 2d, § 399.) Though this judgment is not directly before us for review, by our decision we are effectuating it. This, of course, implies our own judgment that the Supreme Court did not abuse its discretion in approving the stipulation and thereby in satisfying itself, as it was required to do, that the realization of the testator’s initial specific plan for the fund — the laboratory — cannot be regarded as a necessary condition of the trust or an “ express command ” sufficient to foreclose application of the doctrine of cy pres to *391 the trust res during his lifetime and with his consent, in compliance with the statute. (Compare Matter of Syracuse Univ. [Heffron], 3 N Y 2d 665 with Matter of Syracuse Univ. [Hendricks], 4 N Y 2d 744; see, generally, Bogert, Trusts and Trustees [2d ed.], § 420.)
By its judgment, the Supreme Court permitted a deviation from the terms of the trust. The unrestricted gift over to Harlem Hospital at the end of 10 years was prevented. This was the event which could have terminated the trust hy its terms but which the settlor and trustees sought successfully to avoid. The Supreme Court satisfied itself that a modification of the specific trust purpose would more effectually accomplish the purpose of the trust and the settlor’s charitable intent. AH we hold today is that where a trust is so modified during the settlor’s lifetime, by application of the ancient doctrine of cy pres, the judgment permitting the modification constitutes an “ amendment ” within the meaning of EPTL 3-3.7 (subd. [b], par. [1]) which preserves rather than terminates the original trust.
Because this type of trust amendment is accomplished by court order, as it must be, there is compliance with the requirements of EPTL 3-3.7 (subd. [a] and subd. [b], par. [1]) that the amendment be “ executed and acknowledged by the parties thereto in the manner required by the laws of this state for the recording of a conveyance of real property ”. What is required is that the instrument of amendment be recordable. Section 297-b of the Real Property Law provides that the certified copy of “ a judgment, final order or decree * * * rendered by a New York state court of record * * * affecting the title to or possession, use or enjoyment of real property * * * may be recorded * * * in the same manner as a conveyance duly acknowledged or proved and certified so as to entitle it to be recorded ”. The amendment meets the requirements of the recording laws of this State. The EPTL provides that these requirements be met, not so that the instrument of amendment can actually be recorded, but in order to safeguard against fraud and overreaching. The Legislature in section 297-b of the Real Property Law has deemed a judgment to meet the otherwise specified requirements of execution and acknowledgement and has thereby regarded a judgment, of itself, as sufficient *392 safeguard against the evils sought to be avoided by the recording laws. These evils are further avoided by the statutory requirements of the settlor’s consent to a modification of a charitable trust during his lifetime (Personal Property Law, § 12, subd. 2; now EPTL 8-1.1, subd. [c]). The instrument evidencing the amendment to the trust referred to in the testator’s will is a judgment of the Supreme Court and as such it meets the formal requirements of EPTL 3-3.7.
In regarding the Supreme Court’s judgment incorporating the stipulation of the interested parties as an amendment of the original inter vivos trust, we have liberally construed the provisions of EPTL 3-3.7, as applied to this particular charitable trust. The statute does not expressly circumscribe the type of allowable “ amendments ” to an inter vivos trust instrument which is identified in a testamentary pour over provision. (See Report No. 6.IB, Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, N. Y. Legis. Doc., 1963, No. 19, pp. 286, 307, 313.) This is a task more properly left to the judiciary. It is still our task[3] to determine, as here, the validity of testamentary provisions pouring over property to trusts which are at once subject to amendment after execution of the will and nonetheless free from the specific and salutary requirements of the Statute of Wills (EPTL 3-2.1).
Nonetheless, in determining the nature and extent of allowable amendments to a particular inter vivos trust, our inquiry remains ultimately cast in the framework of the policies underlying that same Statute of Wills — the avoidance of fraud, chicahery, mistake (Matter of Rausch, 258 N. Y. 327, 333) or the possibility of foisting upon the testator a document which fails to declare his purpose (Matter of Fowles, 222 N. Y. 222, 233). “ Some reference to matters extrinsic is inevitable. *393 Words are symbols, and we must compare them with things and persons and events * * * It is a question of degree ” (p. 232). None of these policies is frustrated by our decision today. It is true that the referencé in the will to the trust creating the Godfrey Nurse Fund includes a specific purpose for the fund which was later modified in favor of a closely related purpose. Yet, the modification was accomplished with the testator’s consent and was embodied in a judicial decree. By comparison of the description in the will with the Godfrey Nurse Fund as constituted on the date of the testator’s death, we learn the terms of a subsisting relation. (Cf. Matter of Rausch, 258 N. Y. 327, 333, supra.) As a logical matter, this relation enables us to find an amendment of the trust meeting the requirements of EPTL 3-3.7, and, as a matter of policy, to sustain the charitable bequest of the residuary to the Godfrey Nurse Fund and thereby to avoid an intestacy clearly repugnant to Dr. Nurse.
Accordingly, we would affirm the order of the Appellate Division.

. Pursuant to EPTL 8-1.1 (subd. [£]) (formerly, Personal Property Law, § 12, subd. 3), the Attorney-General represents the beneficiaries and acts as the protector and enforcer of charitable trusts.

. The City of New York is the owner of Harlem Hospital.

. By its sanction of pour over provisions meeting certain requirements, the statute obviates the necessity of resort to the overlapping doctrines of “ incorporation by reference ” and “ facts of independent significance ” in explaining the reasons for our decision. (See Commission Report 6.1B, p. 368; see, generally, McClanahan, Bequests to an Existing Trust — Problems and Suggested Remedies, 47 Cal. L. Rev. 267; Palmer, Testamentary Disposition to the Trustee of an Inter Vivos Trust, 50 Mich. L. Rev. 33; Note, 34 N. Y. U. L. Rev. 1106; Ann., 12 ALR 3d 56.)