OPINION OF THE COURT
Allen Murray Myers, J.
Defendant’s motion to restore the action to the Trial Calendar is denied.
This is a matrimonial action commenced by the plaintiff husband on October 16, 1980. Defendant wife appeared on October 23, 1980. Defendant wife is an attorney; plaintiff husband runs a restaurant known as “The Cookery”. Settlement negotiations regarding the issues of divorce and the equitable distribution of the property took place in January of 1983; trial began January 13, 1983 before the Honorable Lawrence E. Kahn, Justice of the Supreme Court. However, negotiations continued. A settlement was reached and a stipulation of settlement was read into the record on January 17, 1983.
The stipulation provided that: (1) the defendant wife agreed to pay to the plaintiff husband the sum of $50,000 over a three-year period; the first payment of $20,000 to be made on or before May 15, 1983, the second payment of $15,000 to be made one year to the day after the first *573 payment, and the final payment of $15,000 to be made two years to the date following the first payment of $20,000; (2) the delivery of all shares of stock owned by the wife and the couple’s two sons in the husband’s restaurant business; (3) the designation of an escrow agent to hold the initial $20,000 payment and the corporate stock to be delivered from the children and the defendant wife; (4) the withdrawal of the plaintiff husband’s complaint, his acceptance of the wife’s answer and counterclaim and his concession that he is in default and consents to the defendant wife’s uncontested matrimonial action; upon the entry of a judgment of divorce in favor of the defendant wife, the escrow agent shall deliver the shares of stock and the $20,000 initial payment to the husband; (5) the husband agrees to indemnify and hold the wife and their two sons harmless against any and all claims, damages, liabilities or expenses arising out of their ownership of the restaurant shares prior to their delivery to the husband; (6) upon the entry of a judgment of divorce in favor of the wife, each party releases and relinquishes and waives any and all rights he may have to each other’s real property and personal property, including, but not limited to property in Fire Island, each of their own rental apartments, any and all personal property therein, and any claim which the wife may have had or now has against the Cookery Lafayette, Inc., and any claim which the husband may have against the wife’s property at Fire Island; (7) the proposed divorce decree to be submitted to the court would contain a provision incorporating this stipulation into the divorce decree so that the stipulation would be made a part of the decree, but would not merge into the decree.
Neither party has complied with this stipulation. The defendant wife apparently has not delivered her shares of the restaurant business nor has she made the initial payment of $20,000. The plaintiff husband has not withdrawn his complaint nor accepted service of the wife’s answer and counterclaim, which he claims is conditioned upon his wife’s payment of the initial $20,000 and the delivery of her shares. However, the children have delivered their shares in the restaurant business to the plaintiff husband.
The defendant wife now seeks to vacate the stipulation and to restore the action to the calendar on the grounds *574 that, (1) the stipulation is invalid because it does not comply with section 236 (part B, subd 3) of the Domestic Relations Law in that the settlement agreement was not reduced to writing; (2) the stipulation is unenforceable because it was only conditional; and (3) she was not represented by counsel and acquiesced at the trial to the stipulation only because she was ignorant of matrimonial law and procedures and inexperienced in negotiating the settlement of a litigation matter.
SECTION 236 (PART B, SUBD 3) OF THE DOMESTIC RELATIONS LAW
Pursuant to a recent line of cases in the Supreme Court’s Third and Fourth Departments, a stipulation, even if made in open court, settling the equitable distribution of marital property must comply with section 236 (part B, subd 3) of the Domestic Relations Law. This section states, in pertinent part: “3. Agreement of the parties. An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded. Such an agreement may include (1) a contract to make a testamentary provision of any kind, or a waiver of any right to elect against the provisions of a will; (2) provision for the ownership, division or distribution of separate and marital property; (3) provision for the amount and duration or maintenance or other terms and conditions of the marriage relationship, subject to the provision of section 5-311 of the general obligations law, and provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment; and (4) provision for the custody, care, education and maintenance of any child of the parties, subject to the provisions of section two hundred forty of this chapter. Nothing in this subdivision shall be deemed to affect the validity of any agreement made prior to the effective date of this subdivision.”
Such a stipulation or agreement is known as an “opting-out agreement”. The line of recent cases referred to above is: Giambattista v Giambattista (89 AD2d 1057 [4th Dept]), *575 Hanford v Hanford (91 AD2d 829 [4th Dept]), and Lischynsky v Lischynsky (95 AD2d 111 [3d Dept]).
The stipulation in the instant action was not reduced to writing in the manner required by section 236 (part B, subd 3), but was read into the record. The defendant wife urges this court to follow the approach of the Third and Fourth Departments and invalidate the stipulation of settlement entered into between the parties herein in open court on January 17, 1983.
A stipulation made in open court and read into the record has traditionally been granted the same force and effect as a written agreement. (Puca v Puca, 115 Misc 2d 457.) Such a stipulation has, therefore, proved useful in the expeditious settlement of litigation of all sorts. The different approach that defendant wife urges and, in fact, was adopted by the Third and Fourth Departments would deprive the court and the litigants of the ability to end matrimonial disputes relatively quickly and instead practically mandate their resolution only through protracted litigation.
Generally, “Where a question has not yet been decided by the appellate courts in a certain department, inferior courts in that department must follow the determinations of the appellate courts in any other department until such time as their own appellate tribunals or the Court of Appeals passes upon the question.” (1 Carmody-Wait 2d, NY Prac, § 2:63.) Since there are no First Department cases on point, this court would appear constrained to follow Giambattista (supra), Hanford (supra) and Lischynsky (supra).
However, these cases cited by the defendant wife did not mention decisions of the Court of Appeals enforcing a stipulation made in open court (and incorporated into a Supreme Court judgment), especially Matter of Nurse (35 NY2d 381). The Nurse case dealt with a statute analogous to section 236 (part B, subd 3). Dr. Nurse, a prominent physician in Harlem (in New York City), created an irrevocable inter vivos charitable trust to set up a laboratory for experimental surgery in Harlem Hospital and to pay over the entire principal to the hospital at the end of 10 years. For some reason, the laboratory had not been built and so *576 the purpose behind the trust was not realized at the end of 10 years. The settlor of the trust, i.e., Dr. Nurse, the trustees, the beneficiary and the Attorney-General then executed a stipulation, which was approved by and incorporated in a judgment of the Supreme Court, directing that the trust fund be used partly for lectures on surgery in the hospital and partly for research and fellowship grants to black surgeons. The stipulation and judgment had the effect, not of revoking or terminating the trust or creating a new trust but of amending the trust cy pres. Subsequently, Dr. Nurse died, leaving a will made some years before the cy pres judgment. His will left his residuary estate to the trustees named in the original inter vivos trust with directions to apply and distribute the funds in accordance with that trust. The court deemed this direction to have included the cy pres amendatory judgment. Pursuant to EPTL 3-3.7 (subd [a]), an amendment to an inter vivos trust must be “executed and acknowledged by the parties thereto in the manner required by the laws of this state for the recording of a conveyance of real property”. The court, in Nurse {supra, p 391), found that “[t]he EPTL provides that these requirements be met, not so that the instrument of amendment can actually be recorded, but in order to safeguard against fraud and overreaching.” The stipulation and judgment had met these requirements and safeguards. The decision in Nurse does not specify whether the stipulation was oral or written; that clearly was not one of the court’s considerations. In spite of the statute requiring the amendment to be subscribed and acknowledged with all of the formalities of a deed to be recorded, the court held that a stipulation between the parties entered into in open court was its equivalent.
In the instant matter, that statute which defendant argues is controlling, section 236 (part B, subd 3) of the Domestic Relations Law, has language similar to that of EPTL 3-3.7. Section 236 (part B, subd 3) provides that an opting-out agreement must be “in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded.” Here, too, the legislative intent was not to allow for the recordation of stipulations of settlement, but to prevent fraud and overreaching. A stipulation made before a Judge, read into the *577 record and acknowledged by the parties in open court of their own free will, should provide sufficient protection against such fraud and overreaching in the ordinary case.
A careful reading of section 236 (part B, subd 3) of the Domestic Relations Law seems to support this position. The statute refers to agreements made “before or during the marriage”. It does not specifically discuss stipulations of settlement at the time of divorce. Given the long-established use of stipulations made in open court to settle many issues in a divorce proceeding, it is inconceivable to this court that the Legislature would not have explicitly forbidden their use if it so intended.
Section 236 (part B, subd 3) should not be interpreted as proscribing an oral stipulation made in open court. It is more reasonable to interpret this statute as encouraging agreements between the parties before and during the marriage provided that they are in writing and properly subscribed and acknowledged or entered into in open court.
Although the stipulation in the instant matter was not incorporated into the judgment, it appears to have been approved by the court who read the terms of the stipulation to the parties while on the record. The parties, also on the record, stated that they understood the stipulation, accepted its terms and agreed to abide by those terms of their own free will. The negotiations for this stipulation took place during the course of a trial on the very issues it was intended to settle. There appears to have been no claim of fraud or overreaching. The terms of the stipulation do not appear to be nor have they been claimed to be unreasonable, unfair or unconscionable.
Defendant wife also maintains that the stipulation is unenforceable because it was conditioned on acts which have not been performed. These acts were the wife’s delivery of stock and payment of $20,000 and the husband’s withdrawal of his complaint and default on the wife’s counterclaim. The plaintiff husband refused to withdraw his complaint until the wife paid the $20,000 and delivered the stock. The wife refused to deliver the stock and pay the $20,000 until the husband withdrew his complaint, accepted service of the wife’s counterclaim and consented to a judgment of a divorce in her favor.
*578 The defendant wife implies that these acts were to be mutually conditional and to be performed either simultaneously or at her direction if not complied with; she asserts that all of the issues in the action were to remain “open”. She relies on the following language of the court: “I thank you all for your cooperation and of course it is understood that if the terms of the stipulation are not complied with, both parties’ rights are reserved in all respects.”
This language does not render the stipulation unenforceable at the whim of either party. Further, the defendant wife’s reading of the stipulation is incorrect. It is clear, when the stipulation is read as a whole, that the wife was the first to deliver the stocks and the $20,000 to the escrow agent designated in the stipulation, and only after that event took place would the husband have to withdraw his complaint, accept service of a counterclaim and consent to the entry of a judgment of divorce in favor of the wife.
The defendant wife’s other ground for invalidating the within stipulation of settlement, that she was unrepresented at trial and agreed to the stipulation out of inexperience and under pressure, has no basis in law. The defendant wife was unrepresented because she fired her attorney on the eve of trial. Although she claims to be inexperienced in matrimonial law and procedures, she disagreed with the defense her attorney had prepared. Since the wife was an attorney and the defense was simple, the court denied her request for an adjournment.
A stipulation may be overturned if it was entered into under duress. (See de Sainte Phalle v de Sainte Phalle, NYLJ, June 16, 1983, p 11, col 4.) Defendant wife’s inexperience in negotiations does not constitute duress or coercion by anyone. She is an attorney and knows full well the effect of a stipulation entered into in open court and out of her own free will.
Accordingly, the motion to restore the action to the Trial Calendar is denied. The defendant wife and the plaintiff husband are directed to comply with the terms of the stipulation entered into before the Honorable Lawrence Kahn, Justice of the Supreme Court, on January 17, 1983.
*579 Settle order, including a provision for a schedule of compliance with the terms of the aforesaid stipulation.