OPINION OF THE COURT
Paul A. Victor, J.
In this proceeding the petitioner Kenneth Daniel seeks an *943 order, pursuant to article 52 of the Insurance Law, permitting him to bring an action against the Motor Vehicle Accident Indemnification Corporation (hereinafter MVAIC).
At the hearing conducted before this court respondent conceded that petitioner was injured as a result of an accident involving a hit-and-run motorist and that petitioner is otherwise “qualified”, within the meaning of the Insurance Law, to bring an action against MVAIC. However, respondent argued that petitioner should be precluded from bringing said action because:
(1) he failed to comply with that portion of section 5208 (a) (2) (A) of the Insurance Law, which requires that the accident be reported to the police within 24 hours after the occurrence; and
(2) he failed to comply with section 5218 (b) (5) which requires that petitioner make “all reasonable efforts * * * to ascertain the identity of the motor vehicle and of [its] owner and operator.”
Respondent argued further that in order for petitioner to satisfy the “reasonable efforts” requirement and obtain an order granting permission to proceed against MVAIC, petitioner must first exhaust his remedy and conclude a proceeding against the suspect tortfeasor which is pending in the Supreme Court, Bronx County. Thus, the court herein is also presented with ancillary issues which involve the jurisdiction and power of the Civil Court to issue an order joining and/or consolidating a proceeding in the Civil Court with a proceeding in the Supreme Court.
THE RELEVANT FACTS
At 7:20 p.m. on July 24, 1998 in the vicinity of East Tremont Avenue and Crotona Parkway in the County of Bronx the petitioner, while operating a bicycle, was injured when he was struck by a vehicle operated by an unknown motorist who fled the scene. After the police arrived at the scene of the accident, three witnesses were allegedly present and at least two of them provided inconsistent descriptions of the vehicle and its license plate. According to the petitioner, two of the three witnesses were never identified, and one of the two unidentified witnesses is alleged to have said that he chased a “white Chevrolet with New York plate number T218086C.” (Emphasis added.) The police report identified only one witness, Jacinto Ortiz, and the report contained no mention of a Chevrolet or the alleged *944 chase of the vehicle. The report, however, did contain the following description of the accident, the vehicle and its operator:
“Operator — unknown
“Plate Number — TZ18086C New York
“Make — Lincoln
“Type — 4DSD
“Description of Event — ‘Bicyclist states that he was riding East bound on E. Tremont Ave. when above white Lincoln taxi struck his front tire causing him to fall to ground injuring his left hand and damaging front tire of bicycle. Vehc #1 fled the scene.’ ” (Emphasis added.)
At the hearing, other than to identify the vehicle as white, the petitioner was unable, from personal knowledge, to provide any information which would assist in the identification of the vehicle or its owner and operator.
Neither the reporting police officer nor the witness Ortiz was available to testify at the hearing. In addition, neither the petitioner nor the respondent offered any evidence concerning the source of the information contained in the police report, other than that which may be inferred from the document itself.
Petitioner, however, did subpoena one Emanuel Odili, who admitted that on July 24, 1998, he was the owner of a white 1990 Chevrolet vehicle bearing license plate number T218086C, which he used as a taxi. He claimed, however, that he was not involved in an accident on July 24, 1998 and stated that he used this vehicle on that date to travel to New Jersey where he remained from at least 1:00 p.m. to 7:00 p.m. at Newark Airport (waiting for an uncle who never arrived) and thereafter to a girlfriend’s house in Jersey City where he remained until 11:00 p.m. Apart from the hearsay evidence concerning the chase of the vehicle, no further evidence was offered by petitioner, the respondent, or the witness to either corroborate or contradict Odili’s testimony; and no reliable evidence was offered from which the operator of the offending vehicle could be ascertained. Obviously, the hearsay evidence concerning the chase of the vehicle, which was proffered by the petitioner, is not admissible. Although this inadmissible evidence directly implicates the witness Odili as the owner of the vehicle which struck petitioner and fled the scene of the accident, it is rendered even less reliable as a result of the perhaps disingenuous, but otherwise unchallenged, denial by Odili that he or his vehicle was involved in the accident. When his denial is coupled *945 with the unavailability of the witnesses and the inconsistent information concerning the offending vehicle as given to the police, a finding that Odili was the owner and/or operator is rendered speculative at best.
The witness Odili said that he first learned of the accident when he received a letter and “other papers” from petitioner’s attorney. Although he could not identify the other papers as a summons and complaint, it was established that a judicial proceeding is presently pending in the Supreme Court, Bronx County, under index number 6651/99 in which the petitioner is named as plaintiff against Odili as a defendant, arising out of this accident.
I. Section 5208 (a) (2) (A): Notice to Police
The court finds and concludes that there has been compliance with the requirements of section 5208 (a) (2) (A) of the Insurance Law which requires notice to the police within 24 hours of the occurrence. Obviously, since the police were called to the scene of the accident shortly after its occurrence and made a report of the investigation, the court concludes that petitioner was not required to make any further report to the police and the court determines that the requirements of section 5208 (a) (2) (A) have been totally fulfilled.
II. Section 5218 (b) (5): Reasonable Efforts
Section 5218 of the Insurance Law provides in relevant part that:
“(a) Any qualified person having a cause of action for death or personal injury arising out of the ownership, maintenance or use of a motor vehicle in this state, when the identity of the motor vehicle and of the operator and owner cannot be ascertained or it is established that the motor vehicle was at the time of the accident, in the possession of a person without the owner’s consent and that the identity of such person cannot be ascertained may, upon notice to the corporation, apply to a court for an order permitting an action therefor against the corporation in that court.
“(b) The court may proceed upon the application in a summary manner and may make an order permitting the action when after a hearing it is satisfied that * * *
“(5) all reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator and either the identity of the motor vehicle and the owner and operator cannot be established, or the identity of the operator, *946 who was operating the motor vehicle without the owner’s consent, cannot be established” (emphasis supplied).
Upon the admissible evidence presented herein, the court concludes that there is a significant possibility that a proceeding against Odili will be unsuccessful. However, at the hearing, respondent, citing Matter of Ruiz v MVAIC (19 AD2d 832 [2d Dept 1963]) and Byrd v Johnson (60 AD2d 900 [2d Dept 1978]) and their progeny, argued further that, even if the court is satisfied that petitioner has otherwise complied with subdivision (b) of section 5218 of the Insurance Law, petitioner, in order to satisfy the “reasonable efforts” requirement of subdivision (b) (5), must first exhaust his remedy and conclude a subdivision (c) action against the suspect owner Odili before seeking any relief against MVAIC. This issue requires further analysis and discussion as well as a consideration of the intent of the Legislature and the purposes of the Motor Vehicle Accident Indemnification Corporation Act as now embodied in article 52 of the Insurance Law.
III. Legislative Intent and Statutory Construction
It is the primary obligation of the courts to adopt a construction of a statute that will bring it in harmony with the intent of the Legislature, and fundamental to that mandate is that a statute must be interpreted in the light of its expressly enacted purpose. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) Equally fundamental to the rules of statutory construction is that, in order to accomplish the declared legislative purpose, the courts are cautioned to avoid narrow interpretations which would thwart the legislative design, and to adopt a liberal construction which will enhance the spirit of the legislation.
In article 52 of the Insurance Law the Legislature declared
“that the motor vehicle financial security act ** * * fails to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them * * * in motor vehicle accidents caused * * *
“unidentified motor vehicles which leave the scene of the accident.” (Insurance Law § 5201 [b] [2].)
The Legislature added that: “[I]t is a matter of grave concern that those persons are not recompensed for their injury and financial loss inflicted upon them and that the public interest can best be served by closing such gaps in the motor vehicle financial security act” (Insurance Law § 5201 [b]).
*947 It is thus axiomatic that in order to fulfill the mandates of the Motor Vehicle Accident Indemnification Corporation Act and to provide the indemnification which the Legislature expressly sought to be given to qualified persons, courts are required to provide a construction which enhances rather than defeats the Act’s purposes. (Matter of Taub [MVAIC], 31 AD2d 378 [1st Dept 1969]; Gordon v MVAIC, 90 Misc 2d 382 [Sup Ct, Bronx County 1976].) Therefore, giving primary consideration to the rules of construction and the declared concern and mandate of the Legislature, it is abundantly clear that this court must employ a construction of section 5218 which would both expedite and facilitate, not impede or delay or make more costly, the ultimate ability of a victim of a hit-and-run driver to secure a recovery for damages sustained. Section 5218 will, therefore, be considered with this mandate foremost in mind.
IV. Proceedings against MVAIC; Subdivisions (c) and (d) of Section 5218
In essence subdivision (c) of section 5218 of the Insurance Law permits a qualified person to bring an action against MVAIC within three months after an adverse verdict and judgment in a prior action against a suspect tortfeasor. However, the judgment in the prior action must expressly state that the verdict is for defendant upon the sole ground that ownership and operation of the suspect vehicle was not established. Subdivision (c) provides in relevant part as follows: “In any action in which the plaintiff is a qualified person * * * and judgment is rendered for the defendant on the sole ground that the death or personal injury was occasioned by a motor vehicle: (i) the identity of which, and of the owner and operator of which, has not been established, or (ii) which was in the possession of some person other than the owner or his agent without the consent of the owner and the identity of the operator has not been established, that ground shall be stated in the judgment. The plaintiff, upon complying with paragraph one of subsection (a) of section five thousand two hundred eight of this article,[1] may within three months from the date of entry of the judgment make application to bring an action upon the cause against the corporation in the manner provided in this section.” (Emphasis added.)
It is noted that there is no language in this subdivision, or for that matter anywhere in section 5218, which expressly *948 precludes an action against MVAIC unless such a judgment is first obtained in a proceeding against the suspect tortfeasor. On the contrary, subdivision (d) of section 5218 speaks to an alternative procedure and the right of a qualified person to join MVAIC as a party defendant in a pending proceeding against a suspect owner/operator. The only apparent precondition to such joinder is the entry of an order pursuant to subdivision (a) after a hearing and findings by the court, including a finding that petitioner has made “reasonable efforts” to identify the owner and/or operator of the hit-and-run vehicle.
Subdivision (d) of section 5218 provides that: “In any action commenced in respect of the death or injury of any person arising out of the ownership, maintenance or use of a motor vehi: cle in this state the plaintiff shall be entitled to make the corporation a party defendant if the court has entered the order provided for in subsection (a) of this section.” (Emphasis added.)
Even when read without liberal interpretation, the above subdivisions of section 5218 reveal a legislative intent to provide a plaintiff/petitioner with an option either to first conclude a proceeding against the suspect owner/operator before commencing a proceeding against MVAIC; or, in the alternative “to make [MVAIC] a party defendant” in a proceeding which has already been commenced against the suspect owner/operator, where the plaintiff demonstrates that, despite “reasonable efforts”, the proceedings against said suspect owner/operator may not be successful. It is apparent that said subdivisions of section 5218 contain no expressions which would require as a precondition that a qualified person conclusively establish that the proceedings against the suspect owner/operator would be unsuccessful. Such a precondition would require more than just “reasonable efforts” and would result in a virtual judicial repeal of the option provided by subdivision (d). In any event, such a construction would certainly appear to be in derogation of the mandate of the court to close gaps in the law and to adopt a construction in harmony with the intent of the Legislature. Inexplicably, however, there is a significant body of appellate cases (mostly in the Second Department) which presently impose this onerous precondition and mandate that a proceeding against the suspect owner/ operator must first be prosecuted to a judgment prior to any consideration of an action against MVAIC. (See, for example, Hauswirth v American Home Assur. Co., 244 AD2d 528 [2d Dept 1997]; Matter of Troches v MVAIC, 171 AD2d 873 [2d *949 Dept 1991]; Matter of Thompson v MVAIC, 39 AD2d 508 [3d Dept 1972].)
In Hauswirth, the Second Department held that the Supreme Court properly dismissed the complaint against MVAIC, and held further that: “Inasmuch as the plaintiff is aware of Chamber’s identity as a possible owner of the vehicle that allegedly hit her, the plaintiff must first exhaust her remedies as against Chamber before seeking relief from MVAIC [citations omitted]” (Hauswirth v American Home Assur. Co., 244 AD2d, supra, at 529 [emphasis added].)
Thus, the Hauswirth and Troches Second Department decisions (supra) instruct that when a “possible owner” has been identified, the term “reasonable efforts” as provided in subdivision (b) (5) of section 5218 must be deemed to mandate that an action against said possible owner be concluded before any consideration of an action against MVAIC. This narrow interpretation of the Insurance Law in the Second Department appears to be based upon earlier less restrictive decisions of the Court which also disallowed the joinder of MVAIC as a party defendant. However, in those earlier cases it was made abundantly clear that, since the owner/operator of the hit-and-run vehicle would be established, MVAIC’s participation as a party defendant was unnecessary. (Byrd v Johnson, 60 AD2d 900 [2d Dept 1978], supra; Matter of Chocko v MVAIC, 20 AD2d 728 [2d Dept 1964]; Matter of Ruiz v MVAIC, 19 AD2d 832 [2d Dept 1963]; see also, Matter of Cabral v MVAIC, 48 Misc 2d 456 [Sup Ct, Bronx County 1965].) For example, in Byrd (supra [which relied upon Matter of Ruiz v MVAIC, supra]) the plaintiff’s application to join MVAIC was denied only because the Court found that there was “substantial evidence linking the suspect vehicle to the accident.” (Emphasis added.) That earlier panel of the Court, which was keenly aware of the intent of the Legislature, made it clear that its ruling was an exception to the general rule when it incorporated the following explanation in its decision: “[T]he Insurance Law should be liberally construed for the benefit of the innocent victims of hit and run accidents. The risk that separate trials may result in inconsistent determinations to the needless detriment of the innocent victim, and in contravention of the general purposes of article [52] of the Insurance Law, remains of great concern to this court. Therefore, as a general rule, MVAIC should be joined as a party defendant whenever there is a significant possibility that the suspect vehicle and its operator have not been, or cannot be, properly identified.” (Byrd v Johnson, 60 AD2d, at 901 [emphasis added].)
*950 Only because there was substantial evidence to establish ownership and operation of the suspect vehicle did the Byrd panel of the Court not follow the liberal general rule which would allow joinder of MVAIC where there is a possibility that the suspect tortfeasor cannot be properly identified. The Byrd/ Ruiz exception was also reluctantly followed in the Supreme Court in the County of Bronx (Matter of Cabral v MVAIC, supra). In Cabral, the court was disturbed by any restriction on the right of qualified persons to join MVAIC as a party defendant; and stated that it viewed such restrictions as a “gross perversion of the beneficent purposes of the MVAIC act.” (Supra, at 461.) However, the Cabral court was also constrained to deny the joinder application, only because of the existence of “strong evidence” identifying the owner of the hit-and-run vehicle.
In Hauswirth (supra), the “general rule”, which was enunciated in Byrd (supra) to permit joinder, was ignored, and the exception was permitted to devour the rule by a subtle change in the object of the possibility upon which the general rule was founded. Whereas Byrd recognized and acknowledged that the Insurance Law should be construed to permit joinder when there is a “significant possibility that the suspect vehicle and its operator * * * cannot be * * * properly identified” (Byrd v Johnson, 60 AD2d, supra, at 901 [emphasis added]), in Hauswirth the law was narrowly interpreted in order to deny joinder when there is a possibility that said vehicle and operator can be identified!
In the Fourth Department, when confronted with a factual pattern similar to the one presently under consideration by this court, the Appellate Division refused to adopt the unduly restrictive “exhaustion of remedy” condition which was urged by MVAIC and adopted in Hauswirth (supra; Matter of Brown v MVAIC, 35 AD2d 339 [4th Dept 1970]). In Brown, MVAIC argued that it would incur a needless financial burden unless the Court requires that qualified persons first “exhaust their rights” against suspect owners and operators. Rejecting this argument, the Brown Court reasoned that: “When it is apparent to the court, in the exercise of its judicial discretion, that a qualified person has only a slight chance of holding in a suspected hit-and-run owner or operator, it is sound practice to bring in MVAIC as a party-defendant and have the issue of the suspect’s responsibility for the accident settled in that one lawsuit.” (Matter of Brown v MVAIC, 35 AD2d, supra, at 343 [emphasis supplied].)
*951 Article 52 was enacted for the benefit of innocent victims, not for the benefit of MVAIC, which is a creature of, and funded by, that enactment to close the gaps in the law and to relieve the financial burdens imposed upon victims of hit-and-run drivers. MVAIC was created not to be a hindrance to recovery by these innocent victims, but to provide “indemnification” to them when they are victimized by hit-and-run tortfeasors, including those suspect owners and operators who continue to deny responsibility when they are identified, albeit by insubstantial and/or inadmissible evidence. It would appear that MVAIC and qualified plaintiffs should be allies, not adversaries, when seeking to establish the responsibility of a suspect owner/ operator. (See, Matter of Rosen [MVAIC], 20 AD2d 704 [1st Dept 1964].) If the choice is added financial burden to MVAIC or added financial burden to a victim, a liberal construction of the statute mandates that the court select that option which benefits said innocent victim. There is no reasonable construction of this statute which would precondition its benefit upon the ability of a qualified person to finance speculative and needless litigation; especially since subdivision (d) of section 5218 expressly permits all issues to be resolved in one trial.
In any event, despite subdivision (d), the Departments of the Appellate Division are clearly in conflict as to whether the term “reasonable efforts” mandates that a petitioner must first exhaust his remedy against a suspect tortfeasor before being allowed to proceed against MVAIC.
V. Inferior Courts in the First Department are not Bound by the Second Department Decision in Hauswirth
The general rule is that, in the absence of a relevant decision in its own Department, inferior courts are bound to follow applicable decisions in another Department of the Appellate Division. This concept is founded upon the time-honored doctrine of stare decisis and the fact that there is in New York State but one Appellate Division even though it is divided into four Departments. (Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]; People v Brisotti, 169 Misc 2d 672 [App Term, 1st Dept 1996]; People v McMurty, 141 Misc 2d 510, affd 174 AD2d 988, lv denied 78 NY2d 1078 [1991]; Josephson v Josephson, 121 Misc 2d 572 [Sup Ct, NY County *952 1983].) In Brisotti, which cited Mountain View Coach Lines (supra) with approval, it was held that: “ The Appellate Division is a single State-wide court divided into departments for administrative convenience * * * and, therefore, the doctrine of stare decisis requires triál courts [and the Appellate Term] in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [the Appellate Division of this department] pronounces a contrary rule’ [citations omitted].” (People v Brisotti, 169 Misc 2d, at 673.)
It would appear equally fundamental, however, that where the Court of Appeals has not spoken and there is no applicable Appellate Division decision in its own Department, conflicting decisions in the other Departments are not binding on an inferior court; and it is then free to fashion a decision which it deems to be appropriate and consistent with the over-all objectives sought to be achieved by the applicable statute. (See, Brown v Village of Albion, 128 Misc 2d 586.)
In the case under consideration there are no directly relevant decisions in the Appellate Division, First Department; and as stated above, the other Departments are in conflict as to the ambit of the reasonable efforts required of a qualified person, and whether said reasonable efforts necessarily entail an exhaustion of all remedies against a suspect tortfeasor, and whether joinder or consolidation is permissible when a plaintiff demonstrates that a pending action against a suspect tortfeasor may not be successful.
VI. Factors Which Favor Joinder and/or Consolidation
By having all issues decided in one proceeding judicial economy is achieved and the possibility of inconsistent determinations is eliminated. If separate trials are conducted, MVAIC is not absolutely foreclosed from raising the issues “resolved” in the first trial. Clearly, the earlier decision would not be res judicata as to MVAIC if it was not a party to the earlier action. (Matter of Wallace v MVAIC, 25 NY2d 384; Potter v MVAIC, 73 AD2d 787 [4th Dept 1979]; Matter of Cabral v MVAIC, 48 Misc 2d, supra, at 460-461.)
In Wallace (supra, at 388), although it was held that MVAIC would not be permitted to relitigate an issue which was *953 determined in a prior proceeding,[2] the court stated that MVAIC would have been able to relitigate such issue if it had alleged, and could reasonably demonstrate, that the prior adjudication was the result of a “lack of energetic prosecution or * * * collusion.” Therefore, by use of such allegation, MVAIC may raise the issue of the reasonableness of the efforts made by a plaintiff/petitioner in a prior proceeding, all with resultant protracted litigation, added expense to the victim and, at the very least, a further delay in securing the benefits which the act sought to provide to such victims. In addition, in a second proceeding MVAIC would be entitled to engage in all of the usual pretrial procedures and discovery proceedings which are traditionally and statutorily available to a defendant in a tort action, all of which would also add to the delay in bringing the ultimate issue to closure. Obviously if MVAIC is joined as a party in the proceedings against the suspect tortfeasor, all of these issues and procedures can be simultaneously and more efficiently resolved in that one proceeding rather than by sapping the resources of the litigants and the court in multiple proceedings.
MVAIC also benefits by participation in the first proceeding. In Wallace (supra, at 388) the New York Court of Appeals held that, although MVAIC is not precluded from raising the issue previously litigated, it will be permitted to do so only if it can establish a reasonable basis to show that the prior verdict was the product “of taint of collusion or default.” Thus, although MVAIC, with its greater resources, may have been able to establish the identity of the suspect tortfeasor had it been a party in the first proceeding, it may be precluded from raising this issue as a defense in the second proceeding unless it can meet the difficult threshold established by Wallace. However, by participating in the initial proceeding against said suspect tortfeasor, MVAIC can join with and assist a less resourceful plaintiff in an attempt to prove and establish the suspect tortfeasor’s responsibility. If successful in that effort, MVAIC will be absolved of responsibility and not be required to indemnify plaintiff for the damages sustained.
The final beneficiary of consolidation is the judicial system, which, with its ever increasing case loads, can ill afford to tolerate or encourage a needless multiplicity of lawsuits. Public policy favors joinder and/or consolidation when cases present *954 common questions of law and fact; and said cqnsolidation and/or joint trial will usually be granted unless a litigant can demonstrate that a joint or consolidated trial will prejudice a substantial right. (CPLR 602, 1002; Firequench, Inc. v Kaplan, 256 AD2d 213 [1st Dept 1998]; Amtorg Trading Corp. v Broadway & 56th St. Assocs., 191 AD2d 212 [1st Dept 1993].)
In any event, a consolidated or joint trial will obviate all controversy and further litigation over the reasonableness of plaintiffs efforts as well as eliminate the possibility of inconsistent verdicts.
CONSOLIDATION, JOINDER AND THE JURISDICTION OF THE CIVIL
COURT
After an order has been entered granting a petitioner the right to bring an action against MVAIC, the Insurance Law provides an absolute right to said petitioner to join MVAIC as a party defendant in proceedings which are pending against the suspect tortfeasor. As previously discussed, subdivision (d) of section 5218 provides that, if an order pursuant to subdivision (a) is entered permitting an action against MVAIC, the “plaintiff shall be entitled to make [MVAIC] a party defendant” in any proceeding against the suspect tortfeasor. (Emphasis added; see also, CPLR 602 [consolidation]; 1002 [permissive joinder of parties].)
Obviously, if both actions are permitted to proceed independently, there is a possibility that either MVAIC or plaintiff/ petitioner will be prejudiced. Equally obvious is that neither will be prejudiced if MVAIC is joined as a defendant and/or the two proceedings are consolidated for trial. For all of the reasons already stated, it is the court’s conclusion that it would be improvident and unjust to merely grant permission to bring an action against MVAIC and not either join MVAIC as a defendant in the prior proceeding or consolidate the proceedings so that all issues can be fully, fairly and consistently determined. However, procedural and jurisdictional obstacles prevent this court from rendering the complete decision, which it feels would provide just and proper relief.
It is noted at the outset that petitioner has not specifically requested consolidation or joinder pursuant to Insurance Law § 5218 (d) or pursuant to CPLR 602 or 1002. However, it is also noted that, in his final prayer for relief, a request is made “for such other or further relief as to the Court may deem just and proper” (emphasis supplied). Thus, not only has petitioner expressly requested that the court fashion “just and proper” *955 relief, CPLR 3017 (a) provides that “the court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just.” (See, Matter of Nowak v Wereszynski, 21 AD2d 427, 430-431.) However, although the Civil Court has been provided with jurisdiction over section 5218 proceedings,[3] the pendency of the action against the suspect tortfeasor in the Supreme Court has deprived the Civil Court of the jurisdiction it would ordinarily have had to join MVAIC as a defendant and/or to consolidate the proceedings had both actions been placed in the Civil Court. The Civil Court, unlike the Supreme Court, lacks the power to remove and consolidate an action pending in the Supreme Court with an action pending in the Civil Court. (See, CPLR 325, 602 [b].) In addition, it does not have the power to transfer a duly filed Civil Court action, over which it has jurisdiction, to the Supreme Court. (NY Const, art VI, § 19 [f]; Apollon Waterproofing & Restoration Corp. v Brandt, 172 Misc 2d 888 [Civ Ct, NY County 1997]; Pratt Inst. v Niehoff Realty, 120 Misc 2d 845 [Civ Ct, Kings County 1983].)
Article VI, § 19 (f) of the New York State Constitution provides that: “The courts for the city of New York established pursuant to section fifteen of this article shall transfer to the supreme court * * * any action or proceeding which has not been transferred to them from * * * said court[ ] and over which the said courts for the city of New York have no jurisdiction.” (Emphasis supplied.)
In the Pratt Inst, case (supra), the Civil Court in Kings County, rather than dismiss a proceeding over which it had no subject matter jurisdiction, determined that it was preferable, as well as mandated by the State Constitution, to have the proceedings transferred to the Supreme Court. Similarly in Apollon (supra, at 892, n 3) the Civil Court, having received a motion to dismiss a third-party action over which it had no jurisdiction, transferred only that third-party proceeding to the Supreme Court and explained further, citing article VI, § 19 (f) of the New York Constitution, that “[t]he court is not transferring the entire action because it does not have the power to do so.”
*956 It would appear that, in the case under consideration, this court is faced with a similar dilemma and a similar solution to the dilemma. Since the court has jurisdiction to grant leave to petitioner to bring an action against MVAIC pursuant to subdivision (a) of section 5218, it may not transfer that proceeding to the Supreme Court, and, since it lacks the power to consolidate or join said proceedings, it appears mandated, as well as just and appropriate, to transfer that portion of petitioner’s motion to the Supreme Court.
CONCLUSIONS AND DECISION
Under the totality of circumstances presented in these proceedings, the court is satisfied that petitioner has made reasonable efforts to identify the suspect tortfeasor. It is the court’s opinion that the term “reasonable efforts” as used in the Insurance Law does not require a prior verdict or a conclusive showing that the identity of a suspect tortfeasor cannot be established. The court has determined that it would be inconsistent with the beneficent purposes of the Motor Vehicle Accident Indemnification Corporation Act to require petitioner to proceed against Odili alone on the mere possibility that he would be successful, as well as unduly onerous to require the petitioner, a beneficiary of the act, to “exhaust” himself on what appears, at least at this juncture, to be speculative litigation against Odili. In addition, based on all of the factors stated above, it is the court’s conclusion that all parties benefit by a joint or consolidated trial and that if joinder or consolidation is not permitted, there is a significant possibility that either the petitioner or MVAIC will be prejudiced.
It is therefore the decision of the court that an order be issued:
(1) granting petitioner’s motion to proceed against MVAIC pursuant to the provisions of subdivisions (a) and (b) of section 5218 of the Insurance Law; and
(2) transferring to the Supreme Court that portion of the within motion which requests “further relief as to the Court may deem just and proper”, including consideration of the issue of joinder and/or consolidation of the proceedings; and
(3) directing the Clerk of the Civil Court to transfer to the Supreme Court all papers necessary to a consideration of the issues of joinder and consolidation; and
(4) authorizing the parties herein to submit such other and further papers to the Supreme Court which they deem necessary to a full consideration of the joinder and consolidation issues being transferred; and
*957 (5) directing the parties to comply with all applicable rules of the Supreme Court upon transfer.
The parties are further directed to settle an order upon due notice to each other.

. Section 5208 (a) (1) requires a filing of a notice of claim within 90 days.

. In Wallace (supra) MVAIC was not a party to the prior proceeding and was given no notice of the proceeding but was held bound by the finding that the plaintiffs decedent was uninsured and thus a “qualified person”.

. As originally enacted the Insurance Law empowered only the Supreme Court with jurisdiction over section 5218 proceedings. (See, e.g., Sutherland v MVAIC, 232 NYS2d 256 [Sup Ct, Kings County 1962].) By a series of amendments to the law, this restriction was removed, and other courts, including the New York City Civil Court were provided with jurisdiction. (See, e.g., L 1982, ch 686.)