OPINION OF THE COURT
Richard M. Klein, J.
The issue before the court is whether plaintiff’s State law tort claims are preempted by Federal law.
*585 In 1976, Congress enacted the Medical Device Amendments to, in the words of the statute’s preamble, “provide for the safety and effectiveness of medical devices intended for human use.” (Pub L 94-295, 90 US Stat 539 [MDA].)
The case at bar presents the question whether a premarket approval (PMA) granted under the Federal Medical Device Amendments preempts a State common-law negligence action against the manufacturer of an allegedly defective pacemaker.
The plaintiff Paul Heymach alleges that he sustained serious physical injury when an automatic implantable cardioverter defibrillator designed, manufactured and distributed by defendant Cardiac Pacemakers, Inc., and implanted into his body, malfunctioned. The plaintiff has asserted four causes of action against Cardiac Pacemakers, Inc. sounding in negligence, breach of express warranties, and a strict products liability claim. Defendant Cardiac Pacemakers, Inc. has moved for summary judgment dismissing the complaint on the ground that all of plaintiff’s causes of action are barred by Federal preemption.
The sale and distribution of medical devices such as the pacemaker involved in this case are governed by that portion of the Federal Food, Drug, and Cosmetic Act of 1938 (21 USC § 301 et seq. [FDCA]) known as the Medical Device Amendments of 1976 (see, 21 USC § 360c et seq.). The MDA, through the FDCA (21 USC § 360c et seq.) empowers the Food and Drug Administration (FDA) with comprehensive authority to regulate medical devices (see, Slater v Optical Radiation Corp., 961 F2d 1330, cert denied 506 US 917; Rickman v Gore & Assocs., 988 F Supp 753, 755-758). Pursuant to the MDA, the FDA classifies all medical devices into one of three categories with varying levels of regulation “sufficient to provide a reasonable assurance of the safety and effectiveness” of the device (21 USC § 360c). Class III devices pose the greatest risk and, thus, are subject to the most rigorous regulations. Class III devices are those “purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human life” or which “presentí ] a potential unreasonable risk of illness or injury” (21 USC § 360c [a] [1] [C] [ii]). The device involved herein is indisputably a class III medical device. Before a new class III device may be introduced to the market, the manufacturer must shepard its product through a rigorous review known as the “premarket approval” or “PMA” process. Manufacturers are required to submit detailed information *586 regarding the safety and efficacy of their devices, which is reviewed by the FDA, spending an average of 1,200 hours on each submission (see, Kahan, Premarket Approval Versus Premarket Notification: Different Routes to the Same Market, 39 Food Drug Cosm LJ 510, 512-514; Hearings Before Subcomm on Health & Envt of House Comm on Energy & Commerce, 100th Cong, 1st Sess [Ser. No. 100-34], at 384). The vast majority of class III devices presently on the market, however, have not been subjected to this rigorous review process because of two exceptions to the PMA requirement. First, devices already on the market as of 1976 were “grandfathered” in without FDA approval (see, 21 USC § 360c [f] [1] [A] [i] [I]). Second, devices that are “substantially equivalent” to preexisting devices are exempted from the PMA process (see, 21 USC § 360c [f] [1] [A] [ii]). Class III devices that are “substantially equivalent” are subjected to a limited form of review known as the 510 (k) process wherein if the FDA concludes that the device is “substantially equivalent” to a preexisting device it is permitted to market without further analysis.
In the case at bar, the device in issue, a pacemaker, was subjected to and passed a full PMA review. The defendant Cardiac Pacemakers, Inc. argues that a medical device which has undergone this comprehensive review is exempted from State common-law liability under the preemption doctrine. The preemption provisions of the MDA provide as follows:
“[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
“(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
“(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.” (21 USC § 360k [a].)
The Federal Circuit Courts of Appeals are divided over whether and, if so, the extent to which the MDA preempts State common-law claims (see, English v Mentor Corp., 67 F3d 477; Feldt v Mentor Corp., 61 F3d 431; Michael v Shiley, Inc., 46 F3d 1316; Kennedy v Collagen Corp., 67 F3d 1453). Most of the Circuit Courts who have examined the issue, as well as our own State appellate courts in the Second and Third Departments, have held that the PMA process does preempt State tort actions (see, Martello v Ciba Vision Corp., 42 F3d 1167; Stamps v Collagen Corp., 984 F2d 1416, cert denied 510 US 824; Mendes v Medtronic, Inc., 18 F3d 13; King v Collagen *587 Corp., 983 F2d 1130; Michael v Shiley, Inc., supra; Ambrosio v Barnes-Hind, Inc., 211 AD2d 70, 74; Berger v Medtronic, Inc., 229 AD2d 556). In Berger v Medtronic, Inc. (supra), the Appellate Division, Second Department, relying on the aforementioned Federal Circuit Court cases, held that a common-law tort cause of action based on an allegedly faulty pacemaker lead was properly dismissed as being preempted by the provisions of the Medical Device Amendments (21 USC § 360k). Similarly in Ambrosio v Barnes-Hind, Inc. (supra, at 74), the Appellate Division, Third Department, found that the plaintiffs common-law tort claims based on an allegedly defective lens care product were preempted by “[t]he plain language of the MDA’s preemption clause.” Both of these Appellate Division decisions, however, were either written prior to or without reference to the decision of the United States Supreme Court in Medtronic, Inc. v Lohr (518 US 470), which was decided virtually at the same time as the Appellate Division decision in Berger.[1]
In Medtronic, Inc. v Lohr (supra), the Supreme Court held that State causes of action sounding in negligence and strict products liability were not preempted with respect to a pacemaker lead which had passed the less rigorous “substantial equivalence” review pursuant to section 510 (k) of the MDA (21 USC § 360 [k]). In reaching its conclusion that a section 510 (k) approval could not preempt a State claim, the plurality opinion stated: “ ‘[Substantial equivalence determinations provide little protection to the public. These determinations simply compare a post-1976 device to a pre-1976 device to ascertain whether the later device is no more dangerous and no less effective than the earlier device. If the earlier device poses a severe risk or is ineffective, then the later device may also be risky or ineffective.’ ” (Supra, at 493.)
Seizing upon this portion of the decision, defendant Cardiac Pacemakers, Inc., argues that the Supreme Court failed to find preemption because the device at issue “ha[d] never been formally reviewed under the MDA for safety or efficacy” (Medtronic, Inc. v Lohr, supra, at 493). The FDA had “simply allowed the pacemaker, as a device substantially equivalent to one that existed before 1976, to be marketed without running the gauntlet of the PMA process” (Medtronic, Inc. v Lohr, supra, *588 at 493-494). Defendant contends that under the implicit holding of Medtronic, a pacemaker which has been approved as safe through the full PMA process, as in the case at bar, is necessarily immunized from State common-law tort claims. This court disagrees.
First, before addressing defendant’s argument, there is the issue whether this court is bound by the Appellate Division decisions in the Third Department and here in the Second Department that have specifically found State tort law claims to be preempted by the MDA when a class III device has survived the PMA process.
The rule in New York is that a trial court must follow an Appellate Division precedent in its own Department, and, in the absence of a relevant decision in its own Department, a trial court is bound to follow applicable decisions in another Department of the Appellate Division, until its own Appellate Division decides otherwise[2] (see, Stewart v Volkswagen of Am., 181 AD2d 4, 7). The exception to this rule, in matters of Federal law, would be where there is a contrary decision of the United States Supreme Court. All courts are bound by the United States Supreme Court’s interpretations of Federal statutes and the Federal Constitution[3] (see, People v Kin Kan, 78 NY2d 54; Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506, cert denied 479 US 931; People ex rel. Ray v Martin, 294 NY 61, 73, affd 326 US 496; Alvez v American Export Lines, 46 NY2d 634, 638, affd 446 US 274). Thus, while this court is confronted with what would ordinarily be binding precedent in its own Department, the Supreme Court’s decision in Medtronic (supra), in this court’s view, supercedes any contrary precedent in this or any other Appellate Division of the State. The Medtronic decision consisted of a plurality opinion signed by four Justices with partial concurring and dissenting opinions signed by the remaining five Justices. When a fragmented Supreme Court decides a case and no single rationale enjoys the assent of five Justices, the holding of the Court should be *589 viewed as that position taken by those members who concurred on the narrowest grounds for the result in the case (see, Marks v United States, 430 US 188, 193; Campbell v St. Tammany Parish School Bd., 64 F3d 184, 189). While the Medtronic Court did not confront a factual situation involving a medical device approved through the PMA process, the majority view, even construed on its narrowest grounds, portends that the Court envisioned State common-law tort claims remaining viable, even where the Federal Government has carried out a full PMA review.
The Court’s holding was not based solely, as defendant suggests, on the distinction between a cursory “substantial equivalency” review under section 510 (k), and a full PMA review for safety and efficacy. Instead, the Court made clear its view that the MDA contemplated preemption only where there exist specific Federal requirements at odds with specific State or local requirements (see, Medtronic, Inc. v Lohr, supra, at 501). Critically, the Court explained that by “specifically,” what is contemplated is “device specific regulations,” meaning “ ‘specific requirements applicable to a particular device’ ” (see, Medtronic, Inc. v Lohr, supra, at 500, n 18). The Court stated “that when Congress enacted § 360k, it was primarily concerned with the problem of specific, conflicting state statutes and regulations rather than the general duties enforced by common-law actions” (Medtronic, Inc. v Lohr, supra, at 489). The language of section 360k suggests “that its focus is device-specific enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries” (Medtronic, Inc. v Lohr, supra, at 489). While the plurality opinion did not explicitly rule out the possibility of preemption based on a specific standard of care imposed by a State-law tort action, the Court stated that, “given the critical importance of device specificity in our * * * construction of § 360k, it is apparent that few, if any, common-law duties have been pre-empted by this statute” (Medtronic, Inc. v Lohr, supra, at 502).
Consistent with this rationale, the Appellate Division, First Department, in Sowell v Bausch & Lomb (230 AD2d 77), declined to find preemption of a common-law tort action based on allegedly defective contact lenses, where there were “no Federal regulations that specifically relate to or set out requirements for extended wear contact lenses” (supra, at 84).
In the case at bar, the court can find no conflict between any device-specific Federal requirement and any of the liability- *590 creating premises of the plaintiffs State-law tort suit. Accordingly, notwithstanding the contrary Appellate Division precedent in this Department, the court finds on the basis of the Supreme Court decision in Medtronic (supra) that State common-law tort claims seeking redress for allegedly defective pacemakers remain viable and are not preempted by Federal law.
Finally, with regard to defendant’s separate application for summary judgment dismissing any claim relating to the rate-sensing leads[4] (Possis Medical Inc.’s model 1114), there are issues of fact including, but not limited to, whether the leads, although manufactured by a third party, were provided by defendant along with the pacemaker as a unit. The defendant’s conclusory affirmation that it did not design, manufacture, sell or distribute the leads leaves unclear whether the leads were supplied to the surgeon by the third-party manufacturer or included with the pacemaker by the defendant. In the latter case, the leads, being critical components without which the pacemaker will not function, could arguably be considered “component parts” of the pacemaker, thereby subjecting defendant to liability for the leads’ failure or malfunction (see, Delzotti v American LaFrance, 179 AD2d 497; Market v Spencer, 5 AD2d 400).
Accordingly, the defendant’s motion for summary judgment is denied in its entirety.

. The decision in Medtronic, Inc. v Lohr (supra) was rendered on June 26, 1996, while the decisions in Ambrosio v Barnes-Hind, Inc. (supra) and Berger v Medtronic, Inc. (supra) were handed down in May 1995 and July 1996, respectively.

. This concept is founded upon the time-honored doctrine of stare decisis and the fact that there is in New York State but one Appellate Division even though it is divided into four Departments for administrative convenience (see, Mountain View Coach Lines v Storms, 102 AD2d 663; People v Brisotti, 169 Misc 2d 672; People v McMurty, 141 Misc 2d 510, affd 174 AD2d 988; Josephson v Josephson, 121 Misc 2d 572).

. The interpretation of a Federal constitutional question by a lower Federal court, on the other hand, may serve as useful and persuasive authority, but is not binding precedent (see, New York R. T. Corp. v City of New York, 275 NY 258, 265, affd 303 US 573).

. Generally, rate-sensing leads run between the pacemaker and the heart.