OPINION OF THE COURT
Kenneth L. Gartner, J.
This court granted the instant petitioner’s request, made upon the respondent’s default, for a judgment of possession and warrant of eviction. This court severed and continued so much of the proceeding as seeks a money judgment.
*316 The petitioner’s request in this summary proceeding for a money judgment against the respondent on default, where service was made by other than personal delivery, presents an issue which arises literally everyday, on scores of occasions, involving substantial sums of money, in every landlord-tenant court in the state. It is an issue on which this court is constrained to differ from three recently published opinions, which have sought to effect a radical change in the black-letter treatment of this issue. As explained more fully below, this court is constrained to differ from those decisions despite the fact that it is those decisions — and not the black-letter rule— which are more in accord with the governing statute.
The RPAPL provides that the relief demanded in a petition “may include a judgment for rent due.” (RPAPL 741 [5].) It is also provided in that same statute that the judgment is to include “such money as [the court] may award for rent or otherwise.” (RPAPL 747 [4].) Despite the fact that they are in other respects courts of limited monetary jurisdiction, the New York City Civil Court, the District Courts, the Justice Courts and the City Courts outside the City of New York, have jurisdiction in summary proceedings “to render judgment for rent due without regard to amount.” (3 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 45:13, at 172 [4th ed] [hereinafter, Rasch]; see, CCA 204; UCCA 204; UJCA 204; UDCA 204.)
RPAPL 735 sets forth the manner in which service of the notice of petition and petition is to be made. Service may be made by personal delivery. Alternatively — at the process server’s sole discretion and choice — service can be made by delivery to a person of suitable age and discretion who resides or is employed at the property sought to be recovered (i.e., substituted service). If “upon reasonable application” neither personal delivery nor substituted service can be made, service by conspicuous affixation may be made. If either substituted service or conspicuous affixation service is utilized, certified or registered mailings must also be sent to the respondent both at the property, and, in addition, at any alternative residential and/or business address of which the petitioner has “written information,” with filing of proof of service to be made within three days thereafter, and service deemed complete upon filing.
Under a literal reading of the governing statute, then, upon a respondent’s default, no matter how service is made, as long as it comports with one of the methods provided by RPAPL 735, the petitioner should be entitled to both judgment of pos *317 session and a money judgment. Professor David Siegel agrees that “[t]he legislature has expressly authorized a rent judgment in a summary proceeding, as well as the awarding of repossession, and has drawn the service requirements in RPAPL § 735 without distinguishing between them based on method of service.” (Siegel, NY Prac § 575, at 953 [3d ed] [hereinafter, Siegel].)
In practice, RPAPL 735 is not given its literal effect. “Black letter law for the landlord-tenant practitioner is that a landlord may not obtain a money judgment on a default in a summary proceeding unless he effected personal service or the tenant appeared.” (Treiman and Feder, Default Money Judgments in Summary Proceedings, NYLJ, July 30, 1985, at 1, col 2 [hereinafter, Treiman and Feder]; see, also, Siegel, supra.)
To understand the reason that the statute is not given its unambiguous plain meaning, it is necessary to trace the rule to its source of origin: the 1929 Appellate Division decision Matter of McDonald (225 App Div 403 [4th Dept 1929]). “The leading authority for the rule against money judgments is In Re McDonald.” (Treiman and Feder, supra.)
The Legislature in 1924 first permitted the award of a money judgment for rent in a summary proceeding. The Legislature at that time adopted an already existing Civil Practice Act provision which prescribed the method by which service of process was required to be made in what until then had been a proceeding to obtain possession only. In McDonald, a judgment for both possession and money had been entered upon default against tenants served by other than personal delivery. The tenants’ subsequent motion to set aside the default money judgment was denied by the Niagara Falls City Court, and the City Court’s decision was affirmed by the Niagara County Court. In reversing, the Appellate Division held that the statute could not have been intended by the Legislature to be literally applied as adopted because to do so would be shockingly “novel,” a break with “long-established uniformity” (at 406), and possibly even a violation of due process under Pennoyer v Neff (95 US 714 [1877]). Service by other than personal delivery may have been acceptable for obtaining an in rem judgment of possession on default, but the Legislature must have intended to allow in personam money judgments on default only where personal delivery was made.
Professor Siegel identifies as one of the most significant developments of the twentieth century the death of Pennoyer v Neff. According to Professor Siegel, “[Pennoyer] held that the *318 only way for a state court to obtain personal jurisdiction of a defendant was to serve process on that defendant while the defendant was physically present * * * ” (Siegel, Civil Procedure Has Kept Up With Times, NYLJ, Nov. 29, 1999, at S15, col 3). However, International Shoe Co. v State of Washington, Off. of Unemployment Compensation & Placement (326 US 310 [1945]) permitted the courts to instead more flexibly determine whether “traditional conceptions of fair play” would be served, in recognition of twentieth century realities, if jurisdiction were exercised. (Lancaster v Colonial Motor Frgt. Line, 177 AD2d 152 157 [1st Dept 1992].) Service of process is thus now permitted — against residents and nonresidents alike — by any method reasonably calculated to give a defendant actual notice of the proceeding. (See, Mennonite Bd. of Missions v Adams, 462 US 791, 796 n 3 [1983]; Greene v Lindsey, 456 US 444, 455 [1982]; Frank Emmet Real Estate Inc. v Monroe, 562 A2d 134, 136 [DC App 1989].)
With the passage of time, and the disappearance of its original basis, the rule of McDonald was misstated. As in a game of “telephone,” it became garbled and broadened. Thus, its holding was in some precincts restated to be not that service by personal delivery was required for entry of a default money judgment, but that jurisdiction was required to be obtained “as if the proceeding were one for rent.” As stated in the leading treatise in the area, “[t]o warrant a judgment for rent in a summary proceeding * * * the court must acquire jurisdiction of the person of the tenant as if the proceeding were an action for rent.” (Rasch § 45:14 [citing McDonald]; accord, Eugenis v Felipe, NYLJ, Mar. 14, 2001, at 21, col 6 [Civ Ct, Kings County] [citing McDonald]; Fleming v Flanagan, 178 Misc 2d 723, 725 [Just Ct, Town of Ramapo 1998] [citing McDonald]; Leven v Browne’s Bus. School, 71 Misc 2d 842 [Nassau Dist Ct 1972] [citing McDonald]; 1405 Realty Corp. v Napier, 68 Misc 2d 793 [Civ Ct, Bronx County 1971, Sullivan, J.] [citing McDonald]; Fairhaven Apts., No. 6 v Dolan, 72 Misc 2d 590, 591 [Suffolk Dist Ct 1972] [citing 1405 Realty]; 90 NY Jur 2d, Real Property — Possessory and Related Actions § 223 [1991] [citing McDonald].)
Until relatively recently, these misstatements of McDonald were of little moment, since they occurred solely in dicta. When other than personal service is made under CPLR 308, the follow-up mailing can be made as long as 20 days after the affixation or delivery; service is not complete for 10 days after proof of service is filed with the clerk; and a defendant has 30 *319 days thereafter to answer. Summary proceedings, in contrast, may be brought on 5 to 12 days’ notice. (RPAPL 733, 732.) Moreover, in actions at law a default judgment against a natural person — such as the instant respondent — requires an additional 20 days’ mailed notice. (CPLR 3215 [g] [3].) Consequently, the same courts which viewed McDonald as allowing a default money judgment if service were made “as if’ in an action for rent, nevertheless viewed such service as irreconcilable with the dynamics of a summary proceeding. (See, Treiman and Feder, supra; Siegel, supra; Eugenis v Felipe, supra.)
More recently, however, some courts have begun utilizing the more broadly stated formulation of the McDonald rule to permit the entry of default money judgments.
Under CPLR 308, conspicuous affixation service can be resorted to only after the other methods have been tried unsuccessfully with “due diligence.” This is regarded as stricter than RPAPL 735’s “reasonable application” standard. (See, 7402 Bay Parkway Assoc. v Diamond, 116 Misc 2d 403, 406 [Civ Ct, Kings County 1982]; see, also, Brooklyn Hgts. Realty Co. v Gliwa, 92 AD2d 602 [2d Dept 1983]; Brodnick, Avoiding the Trap: Service of Process on Commercial Tenants Under RPAPL, NYLJ, June 8, 1994, at 5, col 2.) As long as this stricter standard is met, these recent decisions have reasoned, the entry of money judgments on default should be permissible in a summary proceeding. Such entry should always be permissible, they have reasoned, in cases of substituted service.
In Fleming v Flanagan (178 Misc 2d 723 [Just Ct, Town of Ramapo 1998]), the Justice Court observed that “confhsion has led some of the courts (this court included) to the ‘apparent rule’ that money judgments were not allowable in nonpersonal delivery cases.” (178 Misc 2d at 725.) The Justice Court thereupon identified a “public policy” supporting a deviation from the black-letter rule (at 727):
“To relegate a landlord to bring an action at law for rent * * * is economically unfeasible aside from resulting in a duplicity of litigation in an already crowded court system not even envisioned when the Legislature in 1924 permitted both possessory and money judgment relief to be accomplished at one time and in one court. For the reasons stated * * * there should not be, if indeed there is, a prohibition of entering a money judgment against a tenant in a summary proceeding where he has not been served by personal delivery and has not *320 appeared. Of course, the landlord must provide, by affidavit of his process server, the due diligence required by CPLR 308 (4) if process is by conspicuous service. Service upon a person of suitable age and discretion residing or employed at the subject premises should suffice pursuant to CPLR 308 (2) and RPAPL 735 without a showing of due diligence.”
Regarding the concern over the different time periods applicable under RPAPL 735 as distinguished from CPLR 308, Fleming observed that “[a] diligent process server * * * who starts 12 days before the return date, should be able to afford his client a money judgment on the return date.” (178 Misc 2d at 726.) Notably, although Fleming expressed concern that “[m]inimum return dates in the District Court, Civil Court of the City of New York and the city courts are longer [than in the Justice Courts] [sic] and may still pose a problem in those courts” (id.), Fleming’s holding was subsequently adopted and relied upon by both the District Court in Touhamy v Geraldo (187 Misc 2d 550 [Nassau Dist Ct 2001]), and the Civil Court, in Macerich Queens v M.I.E. Hospitality (192 Misc 2d 276 [Civ Ct, Queens County]). Professor Siegel takes the position that the timing issue ought not to be a concern because “[n]othing prevents the legislature from stipulating a shorter notice period for rent in a summary proceeding than it requires for a money claim in an action, as long as each procedure satisfies due process.” (Siegel, supra at 953.)
The irony in this latter comment lies in the fact that while nothing does prevent the Legislature from so acting, nowhere has it been suggested by the Legislature that CPLR 308 should somehow be incorporated into RPAPL 735, or that parts of CPLR 308 should be jettisoned as part of the incorporation. The dispute over whether, how, and to what extent RPAPL 735 and CPLR 308 should be somehow combined involves the courts in doing something the Legislature gives no indication of having ever considered or authorized. The attempted amalgamation of CPLR 308 and RPAPL 735 is necessary solely due to the misunderstanding of the rule of McDonald.
If McDonald did not exist, Professor Siegel’s comment would certainly be appropriate. However, it would be appropriate because RPAPL 735 would plainly govern in all summary proceedings, with no resort ever appropriately made to CPLR 308. As held in City of New York v Wall St. Racquet Club (136 Misc 2d 405, 407 [Civ Ct, NY County 1987]) “[t]he revision of *321 RPAPL 735 created a complete regime for the service of process, unrelated to the service provisions of the CPLR or any other statute.”
In fact, since the interpretation of McDonald was based in substantial part upon Pennoyer, whose holding has since been abandoned, logic would seem to dictate that the “complete service regime” of RPAPL 735 should now control, without the requirement for any amalgamation with CPLR 308. Since the United States Supreme Court rejected the premise that due process rights may depend on whether actions are in rem or in personam, or whether a person is a resident or nonresident, it appears that RPAPL 735 meets constitutional muster as being reasonably calculated to give actual notice — at least as much as does CPLR 308. There might be limited reservations about RPAPL 735’s constitutionality to the extent that it would permit a money judgment based on a posting at and mailing to a location which is not in fact the respondent’s actual residence or place of business, especially where the petitioner has actual knowledge or the ability to obtain actual knowledge — but not “written information” — of such actual residence or place of business. (But see, e.g., Parras v Ricciardi, 185 Misc 2d 209, 212-213 [Civ Ct, Kings County 2000] [RPAPL 735 interpreted to require service on actual residence either even in the absence of “written information,” or under a very broad reading of “written information”].)
Moreover, with Pennoyer relegated to the ash heap, not only is any concern over the constitutionality of RPAPL 735 on these grounds largely obsolete, but the utilization of alternate means of service to personal delivery is no longer “novel” or a break with “uniformity.” To the contrary, “uniformity would obtain now only if substituted service and nail and mail were permitted as predicates for money judgments.” (Treiman and Feder, supra.)
However, if McDonald’s statutory interpretation is deemed correct — that is, if the words meant what McDonald construed the Legislature to intend them to mean, because when RPAPL 735’s predecessor was enacted by the Legislature Pennoyer remained vital — then it is not so simple a matter to reinterpret the language simply because that which animated the Legislature’s understanding has since changed. “[T]he Legislature cannot be deemed to have foreseen developments in constitutional interpretation * * * .” (State v Oliver, 808 SW2d 492, 496 [Tex Crim App 1991].) Subsequent constitutional developments are irrelevant to an interpretation of legislative intent. *322 (Levy, An Unwelcome Stranger: Congressional Individual Rights Power and Federalism, 44 U Kan L Rev 61, 67 [1995].)
In addition, RPAPL 735 is a descendant of the statute dealt with by the Appellate Division in McDonald. (See, Matter of Seagram & Sons v Rossi, 45 Misc 2d 427, 428 [Civ Ct, NY County 1965].) “[T]he legislature is presumed to have had knowledge of the construction which had been placed on the provision * * * and in adopting in these re-enactments the language used in the earlier act, must be deemed to have adopted also the interpretation of the legislative intent * * * and to have made that construction a part of the re-enactment.” (Matter of Scheftel, 275 NY 135, 141 [1937]; accord, Hammelburger v Foursome Inn Corp., 54 NY2d 580, 590 [1981, Meyer, J.]; Lucenti v Cayuga Apts., 48 NY2d 530, 541 [1979, Meyer, J.].) McDonald’s statutory interpretation, in the words of Judge Learned Hand, “withstand [s] the winds of logic by the depths and toughness of [its] roots in the past.” (United States v Kirschenblatt, 16 F2d 202, 203 [2d Cir 1926].)
There are cogent public policy arguments which would favor fully applying RPAPL 735 according to its literal import. (See, e.g., Fleming; Eugenis; Touhamy, supra.) To the extent that landlords are prevented from obtaining money judgments, “[t]he effect [is] to make the non-payment of a rent a cost of doing business and predictable loss for the housing industry * * * The expense * * * is cast on the other tenants in the building * * * .” (Treiman and Feder, supra.)
However, there are also arguments to the contrary. For instance, New York City Civil Court Judge Bruce M. Balter has observed that, at least in New York City “[flor the most part, Notices of Petition are ignored in summary proceedings. Tenants’ organizations blame this reality on ‘sewer service’ caused by unscrupulous process servers * * * .” (Balter and Simone, Reviewing Housing Court and Order to Show Cause, NYLJ, Oct. 11, 2000, at 1, col 1.) Ultimately, the present black-letter rule, while not preventing a landlord from quickly regaining possession of the landlord’s property — the raison d’etre of summary proceedings — simply places landlords on the same footing as any other creditor with respect to money claims, allowing a debtor the up to 60 days’ notice they would be entitled to before default could be entered in a plenary action, rather than the as little as five days afforded in a summary proceeding, unless the certainty of notice which personal delivery guarantees has been achieved.
It is not the job of the nisi prius courts to balance these competing policy considerations. Nor is it the job of the nisi *323 prius courts to, on the basis of a determination reached as the result of such a balancing, attempt an amalgamation of two such separate statutory enactments as RPAPL 735 and CPLR 308.
Should the Legislature wish to legislatively overrule McDonald, it would be a simple matter to enact an amendment to RPAPL 735 stating, for example, that “service under any part of this section shall suffice to give jurisdiction for entry of a judgment, on default or otherwise, providing for all relief which may properly be demanded in a proceeding brought under this Article.” Should another appellate court wish to reject McDonald either as wrongly decided ab initio, or as now obsolete, that too could easily be done. Absent such a legislative enactment or appellate determination, however, the statutory construction which has governed landlord-tenant practice in this state for three quarters of a century should not be precipitously altered by trial level judicial action.
Money judgments upon default should continue to be entered only upon a showing that the respondent was served by personal delivery.
The petitioner’s request for a money judgment is denied.
[Portions of opinion omitted for purposes of publication.]