[893 NYS2d 736]

Expressway Village, Inc., Appellant, v Shirley Denman, Respondent.

County Court, Niagara County, December 23, 2009

## APPEARANCES OF COUNSEL

*Anthony D. Parone* for appellant. *Shirley Denman*, respondent pro se.

## OPINION OF THE COURT

MATTHEW J. MURPHY, J.

Appellant here questions a decision of the Town of Niagara Justice Court (Civil Part, Teixeira, J.), rendered on May 20, 2009, in which the trial court granted this petitioner landlord a default judgment awarding an eviction order, but denied a money judgment because the respondent had been served by conspicuous "nail and mail" process, rather than personal service.

The standard of review in this civil action, where County Court sits as the intermediate appellate court, is said to be as broad as that of the Appellate Division, enabling a full power to review all questions of law, questions of fact and exercises of judicial discretion addressed by the justice court. (*See* UJCA 1701, 1702 [d]; 1703 [a]; 1706; CPLR 5501 [c]; 5703 [b].)

The appellant is represented by counsel, who properly filed the notice of appeal, perfected that appeal, submitted the record on appeal and tendered his written appellate brief. As a result, this court opened an appeal file and sent its customary initial letter to the appellee advising her of the procedures and time deadlines involved. That letter, mailed on September 16, 2009, went to "Shirley Denman, Lot No. 44, Expressway Village, 2740 Service Road, Niagara Falls, NY 14304," the last address noted in the court's file. Sent by ordinary mail, it creates a legal presumption of receipt, since it was never returned to the court as undeliverable. (*See Spangenberg v Chaloupka*, 229 AD2d 482 [2d Dept 1996].)

Further corroborating that legal presumption are the following two facts. First is this court's receipt, on October 20, 2009, of a responding letter purportedly signed by Shirley Denman and her daughter-in-law, Annette Lively. Second, these chambers received a telephone inquiry, on October 14, 2009, from attorney Jeffrey Marion, who indicated that he had been retained by Shirley Denman to represent her on this appeal, he had talked with Attorney Parone (representing the appellant) and they had agreed to a 30-day extension of time to file Ms. Denman's appellate brief. Attorney Marion was directed to send a confirming letter, copied to Attorney Parone, in which event the court would

grant the requested extension. That confirmation letter was received in chambers on October 19, 2009. (Attorney Marion subsequently sent a second letter, received on October 27, 2009, indicating that Shirley Denman had changed her mind and determined not to hire Mr. Marion, thus withdrawing his appearance in this appeal, indicating that Ms. Denman had elected to continue pro se.)

This appeal raises the solitary issue of whether the trial court has the power in a summary proceeding under the New York Real Property Actions and Proceedings Law to enter a money judgment against a respondent who defaults after receiving a petition and notice of petition by substituted or conspicuous, rather than personal, service.

As ably articulated in the appellant's brief, this issue has a long, counterintuitive and interesting history in the courts of this state. It is asserted, and this court accepts, that the authorities indicate the existence of a black letter rule of law in New York prohibiting entry of a money judgment for rents owed unless the tenant was personally served. (*See for example* Bogle, Dobiel, Liotti and Morris, Village, Town and District Courts in New York, Summary Proceedings, ch 12, §§ 12:94, 12:95 [Thomson-West 2008].) Most of the modern cases cite, as the origination of that "rule," the Appellate Division, Fourth Department, case of *Matter of McDonald (Hutter)* (225 App Div 403 [4th Dept 1929]), although—in truth—this "rule" long predated that case. (*See for example Brambir v Seifert*, 127 Misc 603 [App Term, 1st Dept 1926].)

The *McDonald* case was largely based upon the holding in the United States Supreme Court case of *Pennoyer v Neff* (95 US 714 [1877]). Essentially, the courts' concerns in both cases revolved around the Fourteenth Amendment due process right to adequate and sufficient notice and the proper means by which a court acquires personal jurisdiction over a respondent in order to lawfully justify entering a binding judgment against him. Essentially, these early cases discussed the parameters of constitutionally appropriate notice, holding that a plaintiff must use "due diligence" to ascertain and personally serve a prospective respondent, permitting resort to substituted forms of service only where due diligence fails to locate that party. (*See Mullane v Central Hanover Bank & Trust Co.*, 339 US 306 [1950].)

At least one court has ruled that due diligence should be a court determination made in advance; and, if so found, would constitutionally permit the use of substituted service (*Callen v*

*De Koninck*, 23 AD2d 757 [2d Dept 1965]). Another court held that "due diligence" requires some realistic expectation that the method of service utilized might actually give the proposed respondent notice (*Brooklyn Hgts. Realty Co. v Gliwa*, 92 AD2d 602 [2d Dept 1983]). In *Fleming v Flanagan* (178 Misc 2d 723 [Just Ct 1998]) a lower court ignored *McDonald* and allowed entry of a judgment on substituted or conspicuous service because the record demonstrated that due diligence was, unsuccessfully, employed in trying to effect personal service. Some other lower courts followed suit. (*See for example Macerich Queens Ltd. Partnership v M.I.E. Hospitality*, 192 Misc 2d 276 [Civ Ct, Queens County 2002].)

A powerful argument was made by Judge Kenneth Gartner in *Ressa Family v Dorfman* (193 Misc 2d 315 [Nassau Dist Ct 2002]) that the *McDonald* rule should no longer apply (because the legislative and constitutional underpinnings of that earlier case had long since evaporated). While he invited specific legislative or appellate court action to explicitly "overrule" *McDonald*, Judge Gartner felt constrained by the doctrine of stare decisis to continue application of the *McDonald* rule prohibiting the entry of a money judgment when there was no personal service upon the respondent.

The following year, Judge Gerald Lebovits essentially purported to "overrule" *McDonald* and held that a court acquires personal jurisdiction over a defaulting tenant when the petition and notice of petition are served in a summary proceeding using conspicuous place service after due diligence in attempting personal delivery or substituted service, thereby entitling the petitioner to a money judgment upon the tenant's default of appearance. (*See Dolan v Linnen*, 195 Misc 2d 298 [Civ Ct, Richmond County 2003].)

Almost immediately, Judge Gartner responded to the *Dolan* decision, making it unmistakably clear that while he agreed with the legal result (also believing that the holding in *McDonald* no longer correctly reflected the evolved state of constitutional law, just as he had indicated in *Ressa*), he adamantly disagreed with the power of a lower court to ignore stare decisis and "overrule" the explicit holding of a binding, higher court. (*See Arnold v Lyons*, 2003 NY Slip Op 50766[U] [2003].)

In 2004 and 2007, two additional lower courts tracked the holding in *Dolan*, further undercutting *McDonald* and simply sidestepping the concern about stare decisis. Indeed, these cases

did not even mention *Arnold*. (*See Guevera v Cueva*, 5 Misc 3d 1024[A], 2004 NY Slip Op 51531[U] [2004]; *Laskey v Tillotson*, 16 Misc 3d 1124[A], 2007 NY Slip Op 51564[U] [2007].)

With that as the existing state of affairs, had this court sat as the nisi prius court, I would have felt constrained, as Judge Teixeira (and Judge Gartner before him, in *Ressa* and *Arnold*), to apply the de facto discredited—but not legally overruled—Appellate Division, Fourth Department, holding in *McDonald* and deny a money judgment for the lack of personal service in the instant case.

However, this court presently sits as the intermediate appellate court. For these purposes and in this case, that essentially means that I sit as the Appellate Division. For that reason, it seems to me that I have the power to accept or reject the *McDonald* holding, since stare decisis does not prevent a court of coequal legal stature from rejecting outmoded earlier precedent emanating from its own level in the hierarchical court system.

I do not take such action lightly or comfortably. Several factors existing here have convinced me that it is, however, the correct thing to do.

First and foremost, for the reasons coherently stated in all of the cases cited herein, the legal "rule" enunciated in *McDonald* appears to be untenable and incorrect. To this court it appears historically unlikely that the Appellate Division, Fourth Department, would follow its own holding were the matter ever to come before it again. I do not say this because I am so presumptuous as to imagine my powers of intellect to surpass that of the Appellate Division, Fourth Department, or that I have any reliable means of predicting how they might decide. Rather, I recognize the overwhelming unanimity of the rulings since 1960, which all agree that *McDonald* no longer correctly reflects the law on this subject. I agree with observations made elsewhere that the relatively small value of these types of cases makes it economically impracticable for nonindigent, pay-as-they-go litigants to appeal these decisions to the Appellate Division, Fourth Department. That anomaly ought not to continue binding us to clearly bad law. Such simply cannot be justice.

Second, I note that an appellate court has spoken on this issue since August 15, 2007, when the *Laskey* ruling was delivered. While not from the Appellate Division, Fourth Department, and, thus, not able to overrule *McDonald* (which remains binding upon lower courts in this Department), this case does represent a three-judge appellate panel's unanimous and

experienced appellate decision on this identical issue. On October 10, 2007, in *Avgush v Berrahu* (17 Misc 3d 85 [App Term, 2d Dept 2007]), the Appellate Term of the Second Department directly rejected the *McDonald* case and embraced the rationale enunciated in *Dolan, Ressa, Arnold, Guevera* and *Laskey*, holding that money judgments shall be available upon a tenant's default in a summary proceeding, without regard to the manner of service effected therein, upon a showing that such service would be sufficient to support the entry of a money judgment in a plenary action. This ruling is binding upon lower courts in the Second Department; and, by virtue of the lack of any contrary ruling in the Court of Appeals, First Department or Third Department, is powerful authority which the lower courts in the First and Third Departments are free to embrace over *McDonald*. (*Matter of Anne P.C. v Steven P.*, 17 Misc 3d 1107[A], 2007 NY Slip Op 51858[U] [2007]; *Matter of C.S.*, 12 Misc 3d 302 [Fam Ct, Bronx County 2006]; *People v Pestana*, 195 Misc 2d 833 [Crim Ct, NY County 2003]; *People v Brown*, 191 Misc 2d 97 [Sup Ct, Queens County 2002]; *Heymach v Cardiac Pacemakers*, 183 Misc 2d 584 [Sup Ct, Suffolk County 1999]; *Matter of Daniel [Motor Veh. Acc. Indem. Corp.]*, 181 Misc 2d 941 [Civ Ct, Bronx County 1999]; *People v McMurty*, 141 Misc 2d 510 [Sup Ct, Monroe County 1987]; *Mountain View Coach Lines v Storms*, 102 AD2d 663 [2d Dept 1984].)

Third, and lastly, this court is mindful of the fact that should my ruling here overstep my authority—even sitting as the intermediate appellate level court—this decision is appealable to the Appellate Division, Fourth Department. (*See* UJCA 1706; CPLR 5501 [c]; 5703 [b].) Thus, if I am wrong and have unwittingly offended their judicial prerogative, they will be afforded the opportunity to correct my mistake and, in the process, themselves revisit the *McDonald* ruling.

For all of these reasons, I hold that *Avgush* got it right. Money judgments are available to a landlord in a summary proceeding, provided that the record demonstrates that the service actually employed was legally sufficient to support the entry of a money judgment in a plenary action. This means that the clear language employed by the Legislature in RPAPL 735 (1) means exactly what it says. Service may be made in potentially one of three ways: personal service (directly upon the respondent); substituted service (directly upon some other person of suitable age and discretion residing or employed at the same address); or conspicuous "nail and mail" service (effected by affixing a copy

of the notice and petition upon a conspicuous part of the property). To the extent that *McDonald* holds to the contrary, such can no longer be viewed as the law in New York.

Four further caveats should be noted.

First, in order to bypass personal service and employ either of these alternative methods of service, the petitioner must first demonstrate that reasonable application (and due diligence, an even stronger showing, will certainly satisfy this lesser standard) was employed to try and personally serve the respondent and such efforts were unsuccessful. (*See Eight Assoc. v Hynes*, 102 AD2d 746 [1st Dept 1984].) This requires at least two (reasonable application), if not three or more (due diligence), reasonable attempts to effect personal service before resort to alternative methods (*Dolan v Linnen*, 195 Misc 2d 298, 325 [Civ Ct, Richmond County 2003]). Although the trial court did not address this issue, since neither reasonable application nor due diligence were considered important at that time, such due diligence (and, hence, reasonable application) appears, in this record on appeal, to have been made, as the affidavit of service (appellate record at 11) notes attempts made on March 11, 2009 at 1:25 P.M., March 11, 2009 at 6:20 P.M., and March 12, 2009 at 8:15 A.M. That, however, is a factual determination best left to the trial court to decide in the initial instance.

Second, in order to be legally effective, such alternative methods of service, whether by substituted service or conspicuous service, must also be accompanied by a timely dual mailing. Within one business day after such alternative service is employed, the petitioner must mail a copy of the notice of petition and petition to the respondent *both* by registered or certified mail *and* by regular first class mail. (*See* RPAPL 735 [1]; de Winter and Loeb, Practice Commentaries, McKinney's Cons Laws of NY, Book 49½, RPAPL 735 [1].) There is no indication in this appellate record whether that was ever done.

Third, in order to secure a money judgment for attorney fees and other incidental expenses beyond traditional rent owed, the petitioner must demonstrate that there was a contractual basis for recovery of such damages *as rent*. This is because RPAPL only authorizes recovery in justice court of the physical property and "rent" owed. (*See* UJCA 204; RPAPL 701, 741; *Colonial Plaza Corp. v Steele*, 13 Misc 3d 1230[A], 2006 NY Slip Op 52065[U] [2006]; *Henry v Simon*, 24 Misc 3d 132[A], 2009 NY Slip Op 51369[U] [2009]; *Acierno v Faldich*, 4 Misc 3d 98 [App Term, 2d Dept 2004]; *Matter of Bedford Gardens Co. v Silber-*

*stein*, 269 AD2d 445 [2d Dept 2000].) This is done by demonstrating that the lease (the contract) so identified such damages as being payable as "additional rent." While the record on appeal does seem to demonstrate that the lease utilized such language to encompass attorney fees, late charges and other expenses incurred in securing recovery for breaches of the lease agreements, again that factual determination is best left to the trial court. (*See* appellate record at 12-15, lease provision 1 [a], [c]; 5 [b]; *also confer 490 Owners Corp. v Israel*, 189 Misc 2d 34 [App Term, 2d Dept 2001]; *ATM Four LLC v Demezier*, 22 Misc 3d 1132[A], 2009 NY Slip Op 50406[U] [2009].)

Finally, mention is made of the lease (contract) provision found on page 12 of the appellate record, that being paragraph 1 (d). This clause appears to establish a respondent/lessee deposit, which the trial court may need to consider as a possible offset against any money judgment that might be awarded to the petitioner/lessor by the trial court on this remand.

For all of the above reasons, that portion of Judge Teixeira's decision which granted petitioner an order of eviction is affirmed, that portion of his decision which denied the entry of a money judgment because of the lack of personal service is reversed, and the matter is returned to Justice Court so that the petitioner—upon notice to the respondent—may factually demonstrate to the trial court the existence of due diligence (or, at least, reasonable application) and compliance with the dual mailing requirements of RPAPL 735 (1). In the event that petitioner is able to demonstrate to the trial court that reasonable application or due diligence was employed and that the proper dual mailings were made, a money judgment may be entered despite the lack of personal service.

No costs are awarded to the petitioner upon this appeal