OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
Petitioner, respondent’s landlord, initiated a summary proceeding against respondent seeking a warrant of eviction and a money judgment based on her alleged nonpayment of rent. Respondent was served the petition by conspicuous substitute service. Petitioner appeared by its attorney on the petition’s return date, but respondent neither answered nor appeared. On the return date, the court granted petitioner’s request for an eviction warrant. However, because respondent was not personally served with the petition, the court denied petitioner’s request for a default money judgment against respondent. This decision sets forth in greater detail the legal basis for the court’s denial of petitioner’s money judgment claims in this action.
Procedural Background
On January 15, 2016, petitioner Cornhill LLC filed a summary rent nonpayment proceeding under RPAPL article 7 against its tenant, respondent Alice Sposato. Petitioner’s petition sought an immediate warrant of eviction and a judgment for a total of $4,735 for unpaid rent, late fees, and attorney’s fees.
According to his affidavit, the process server affixed the petition to respondent’s door on January 21, 2016 after failing to find her at home on January 19 or January 20, 2016. On January 22, 2016, the process server also mailed the petition to respondent by certified mail, with no return receipt requested.
On January 29, 2016, the petition’s return date, petitioner appeared by its attorney. Respondent, however, neither submitted an answer nor appeared in court on the return date. Consequently, at petitioner’s request, the court issued an im *842 mediate warrant of eviction. However, on February 2, 2016, the court denied petitioner’s additional request for entry of a default money judgment against respondent.
Legal Discussion
Petitioner’s attorney concedes that in Matter of McDonald (Hutter) (225 App Div 403 [4th Dept 1929]), the Fourth Department established the black-letter rule that a petitioner in a summary proceeding cannot obtain a money judgment against a defaulting respondent who was served by other than personal delivery. Generally, the doctrine of stare decisis precludes a court from deviating from a firmly established judicial mandate, particularly one enunciated by a higher court. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 72.) For that reason alone, petitioner’s application for a default judgment must be denied.
Additionally, in 2008, a petitioner landlord appealed from the Rochester City Court’s denial of a request for a default judgment where the defaulting respondent was served by conspicuous substitute service in a summary proceeding similar to this case. Sitting as an appellate court, the Monroe County Court issued an unpublished written decision that rejected petitioner’s assertion that the court should ignore the precedential rule regarding money judgments in summary proceedings established in McDonald. (See Hirt v Goldthrite, Monroe County Ct, Oct. 15, 2008, index No. 08/1539.) Thus, based on Monroe County appellate court judicial precedent as well as Fourth Department precedent, both of which are binding on all lower courts throughout Monroe County, New York, this court must deny petitioner’s application for a default money judgment.
Petitioner contends that it is nevertheless entitled to a money judgment in this proceeding for the reasons expressed by a handful of courts that have awarded money judgments to landlords despite the lack of service of process by personal delivery. Specifically, petitioner relies on Expressway Vil., Inc. v Denman (26 Misc 3d 954 [Niagara County Ct 2009]) to support its position. In Expressway Vil., the Niagara County Court, sitting on appeal from a town justice court decision, repudiated the Fourth Department’s proscription in McDonald against the entry of a default money judgment in a summary proceeding absent personal delivery service as “untenable and incorrect.” (Expressway Vil., Inc. v Denman, 26 Misc 3d at 958.)
*843 Regardless of the validity of Expressway Vil.’s analysis, it is doubtful that the Niagara County Court had the legal authority to reject the Fourth Department’s legal pronouncement in McDonald. Without citing any supporting legal authority, the Expressway Vil. court addressed this point, declaring:
“[T]his court presently sits as the intermediate appellate court. . . . [T]hat essentially means that I sit as the Appellate Division. For that reason, it seems to me that I have the power to accept or reject the McDonald holding, since stare decisis does not prevent a court of coequal legal stature from rejecting outmoded earlier precedent emanating from its own level in the hierarchical court system.” (Expressway Vil., Inc. v Denman, 26 Misc 3d at 958.)
The Expressway Vil. court’s rationale for rejecting the McDonald holding misapprehends a county court’s authority when it acts in an appellate capacity. Sitting as a single judge intermediate appellate court neither transforms a county court into a “court of coequal legal stature” with a five-judge court of the Appellate Division of New York State, nor means that the county court “sit[s] as the Appellate Division.” (Expressway Vil., Inc. v Denman, 26 Misc 3d at 958.) Plainly, a court of a “coequal legal stature” does not have jurisdiction to entertain an appeal from decision of another court of “coequal legal stature.” To the contrary, a court’s decision can be appealed only to a superior court. Yet under New York statutory law, a decision of a county court sitting as an appellate court is appealable to the appropriate Appellate Division Court. {See CPLR 5501 [c]; 5703 [b].)[1]
Accordingly, a court of the Appellate Division remains a court of higher authority to a county court, even when the county court sits as an appellate court under Uniform Justice Court Act § 1701 or Uniform City Court Act § 1701. As such, the doctrine of stare decisis squarely requires a county court sitting as an appellate court within the geographic bounds of the Appellate Division, Fourth Department to follow the legal precedents established by that Court, including the rule *844 established in McDonald. (See Statutes § 72 [b]; People v Hobson, 39 NY2d 479, 489 [1976],)[2]
Even if this court were not bound by Fourth Department and Monroe County precedent, the rules of statutory construction, the judicial doctrine of stare decisis, and considerations of fairness and equity would still compel the application in this action of the Appellate Division, Fourth Department’s longstanding McDonald rule.
As discussed above, the black-letter rule articulated by the McDonald Court in 1929 prohibits the entry of default money judgment against a tenant in a landlord’s summary nonpayment proceeding unless service of the petition was made by personal delivery. The McDonald Court based its ruling on its understanding of the New York State Legislature’s intent when it amended former Civil Practice Act § 1425 in 1924 to permit a landlord in a summary nonpayment proceeding to seek a money judgment in addition to a warrant of eviction against a tenant. (See L 1924, ch 514.) Reviewing the history of New York’s laws governing the service of petitions in summary rent nonpayment proceedings, the McDonald Court found that when the New York Legislature amended former Civil Practice Act §§ 1421 and 1425: “[it] . . . did not intend to change the rule requiring personal service of the initiatory process or substituted service by order of the court, or voluntary appearance, for the recovery of a personal judgment.” (Matter of McDonald [Hutter], 225 App Div at 406.)
The Court further observed that
“until the Legislature has more clearly indicated a contrary intention, the summary proceeding, where a money judgment for rent in arrear can be granted, must be limited to one in which the precept has been personally served or the defendant has voluntarily appeared. (Brambir v Seifert, 127 Misc. 603.)” (Matter of McDonald [Hutter], 225 App Div at 406.)
When a court interprets a statute, that judicial “interpretation becomes as much a part of the enactment as if incorporated *845 into the language of the act itself.” (Statutes § 72 [a].) Further, the New York State Legislature is presumed to have knowledge of the judicial decisions that construe the statutory provisions governing the award of money default judgments against tenants who are not personally served with process. (See B & F Bldg. Corp. v Liebig, 76 NY2d 689, 693-694 [1990]; Hammelburger v Foursome Inn Corp., 54 NY2d 580, 590 [1981].) Indeed, as at least one court has observed, “in this case the legislature could hardly have been unaware of [McDonald’s] black letter rule . . . enforced in courts throughout the state on a daily basis for ‘generations.’ ” (Arnold v Lyons, 2003 NY Slip Op 50766[U] [Nassau Dist Ct 2003].)[3] Because the legislature is presumed to have knowledge of judicial interpretations of its laws, statutory amendments to such laws “must be deemed to have adopted also the [judicial] interpretation of the legislative intent . . . and to have made that construction a part of the re-enactment.” (Matter of Scheftel, 275 NY 135, 141 [1937]; see Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 820 [2015].)
Moreover, the Court of Appeals has recently reaffirmed that where the courts have interpreted a legislative enactment, “if the precedent or precedents have misinterpreted the legislative intention [embodied in a statute], the Legislature’s competency to correct the misinterpretation is readily at hand.” (Palladino v CNY Centro, Inc., 23 NY3d 140, 151 [2014] [internal quotation marks and citations omitted]; Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d at 820.) It is indisputable that between 1929, when McDonald was decided, and the present day, the New York State Legislature has amended the real property summary proceeding laws on several occasions. None of the legislature’s amendments has expressly abrogated McDonald’s black-letter rule regarding the entry of default judgments against tenants in summary nonpayment proceedings.[4] Under these circumstances, the courts are bound to *846 follow the McDonald rule, regardless of whether the McDonald decision was erroneous, under the doctrine of stare decisis. (See Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d at 819-820.)
Despite the lower court decisions that disagree with Matter of McDonald (Hutter), it is far from evident that the Fourth Department’s decision was incorrectly decided. The Fourth Department’s ruling was based on a reasonable and valid interpretation of the statute’s legislative intent, coupled with a judicial concern that
“[to] allow a money judgment to be obtained on what we may call substituted service, justified solely by the affidavit of the process server without the sanction of an order of the court, would be to incorporate into our law a novel practice, and to break down a long-established uniformity.” (Matter of McDonald [Hutter], 225 App Div at 406.)
None of the courts that have declined to apply the McDonald rule address the Fourth Department’s legislative intent analysis, let alone explain why the Fourth Department’s legislative intent was mistaken. To the contrary, some of these courts acknowledge that “at one time . . . McDonald might have represented good law and good policy.” (Dolan v Linnen, 195 Misc 2d 298, 300 [Civ Ct, Richmond County 2003]; see Laskey v Tillotson, 16 Misc 3d 1124[A], 2007 NY Slip Op 51564[U] [Lockport City Ct 2007].)
Nonetheless, some of these courts maintain that McDonald is no longer binding because of subsequent statutory changes to the service provisions of the Civil Procedure Law and Real Property Actions and Proceedings Law. (See e.g. Expressway Vil., Inc. v Denman, 26 Misc 3d at 958-961; Avgush v Berrahu, 17 Misc 3d 85, 89-90 [App Term, 2d Dept, 9th & 10th Jud Dists 2007].) But the fact that the New York State Legislature amended these statutory provisions without simultaneously clarifying expressly by statutory amendment that the entry of a default money judgment is permitted regardless of how the petition was served demonstrates that the McDonald rule still controls. As the Court of Appeals emphasized when it applied *847 stare decisis to affirm its prior judicial interpretation of Insurance Law § 3420: “Certainly, legislative developments since our decision in [our prior decision] have not cast doubt on its validity, for the legislature has repeatedly amended Insurance Law § 3420 . . . without making any effort to undo that decision.” (Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d at 820.) This conclusion applies equally as well to the Fourth Department’s judicial interpretation of applicable statutes in McDonald.[5]
Significantly, the equitable concerns identified by the McDonald Court regarding the entry of expedited default money judgments against tenants who are not personally served still endure. Under New York law, several statutory safeguards which protect defaulting defendants against the precipitous entry of unjustified money judgments in plenary civil actions do not exist in accelerated summary nonpayment proceedings. For example, a defendant in a plenary civil action has a minimum of 20 days to answer a complaint, while a tenant in a summary nonpayment proceeding has as little as five days to answer a petition. (Compare CPLR 320 with RPAPL 733.) A defendant in a plenary civil action who is served by conspicuous “nail and mail” service has at least 30 days to answer the complaint after the affidavit of service is filed, while a tenant in a summary nonpayment proceeding must answer the petition no more than 12 days after service. (Compare CPLR 320, with RPAPL 733.) Before obtaining a default money judgment against a defendant in a contract matter, a plaintiff in a plenary action must comply with the 20 days’ additional notice requirements of CPLR 3215 (g) (3) (i) and 3215 (g) (3) (ii), while CPLR 3215 (g) (3) (iii) exempts a petitioner in a sum *848 mary nonpayment proceeding from complying with the additional notice requirements.
Ultimately, the McDonald rule imposes no appreciable hardship on a landlord’s right to obtain either possession of his or her property or a money judgment against a defaulting tenant. In a summary nonpayment proceeding, a landlord remains entitled to seek immediate possession of the premises, and a money judgment against a defaulting tenant who has been served personally. Where the defaulting tenant has not been personally served with the petition, the McDonald rule simply requires a landlord to seek a money judgment in a forum that provides the same protections to defaulting tenants that defaulting defendants in other civil actions have.
Consequently, under all the circumstances, no “extraordinary and compelling” reason exists that would justify the repudiation of the McDonald rule. (Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d at 819-820.) Accordingly, petitioner is not entitled to a default money judgment against respondent in this proceeding.
Conclusion
For the foregoing reasons, petitioner’s application for a warrant of eviction is granted. Petitioner’s application for entry of a default judgment against respondent is denied without prejudice.

. Likewise, a decision of a three-judge appellate term court is appealable by permission to the appropriate Appellate Division Court. (See CPLR 5501 [cl; 5703 [a].)

. Recognizing that its refusal to apply the McDonald rule might “overstep [its] authority—even sitting as the intermediate appellate level court,” the Niagara County Court observed that the Appellate Division, Fourth Department “will be afforded the opportunity to correct [its] mistake.” (Expressway Vil., Inc. v Denman, 26 Misc 3d at 959.) This assertion is disingenuous. The nonprevailing tenant neither answered nor appeared in the initial town court proceeding or on the landlord’s appeal to the Niagara County Court. (See Expressway Vil., Inc. v Denman, 26 Misc 3d at 955-956.)

. In Dolan v Linnen (195 Misc 2d 298, 300-301 [Civ Ct, Richmond County 2003]), the trial court noted that in New York City:
“[n]o clerk will give a judge an order for a money judgment when a tenant receives substituted or duly diligent conspicuous service. That policy, passed along through generations of warrant clerks, is codified in a memorandum possessed by many in the landlord-tenant bar dated June 26, 1990 . . . and in an undated memorandum entitled ‘Failure to Answer Procedure.’ ”

. Real Property Actions and Proceedings Law § 735, the current statutory provision that governs the service requirements for petitions against *846 tenants in summary nonpayment proceedings, does not differ from former Civil Practice Act § 1421, the statutory provision that governed the service requirements for petitions against tenants in summary nonpayment proceedings in 1929, in any way that affects the McDonald rule. (See Ressa Family v Dorfman, 193 Misc 2d 315, 322 [Nassau Dist Ct 2002]; Matter of Joseph E. Seagram & Sons v Rossi, 45 Misc 2d 427, 428 [Civ Ct, NY County 1965].)

. Some courts that rejected the McDonald rule asserted that the McDonald Court’s decision was “largely based” on Pennoyer v Neff (95 US 714 [1877]; see e.g. Expressway Vil., Inc. v Denman, 26 Misc 3d at 956). Because Pennoyer was overruled by Shaffer v Heitner (433 US 186 [1977]), these courts concluded that the McDonald decision’s jurisprudential basis is no longer valid. (See e.g. Avgush v Berrahu, 17 Misc 3d at 89-90.)
Contrary to these courts’ assertions, the McDonald Court did not rely on Pennoyer v Neff to reach its conclusion. Rather, the Court mentioned Pennoyer merely to suggest that a judgment entered against an out-of-state “nonresident” based on other than personal service would be unconstitutional under Pennoyer. (See Matter of McDonald [Hutter], 225 App Div at 406.) However, because the two tenant respondents in McDonald were residents of Niagara Falls, New York, the McDonald Court’s discussion of Pennoyer, which dealt with a court’s in personam jurisdiction over out-of-state residents, was merely dicta.