OPINION OF THE COURT
Christopher S. Ciaccio, J.
Appellant Cornhill LLC (petitioner below and hereinafter Cornhill) appeals from a decision and order of the Rochester City Court (Yacknin, J.) dated February 2, 2016 (51 Misc 3d 840 [2016]), which denied petitioner a money judgment in a summary proceeding brought pursuant to article 7 of the Real Property Actions and Proceedings Law because he failed to effect personal service on the defaulting respondent Alice Spo-sato.
The decision and order are reversed, the relief requested in the petition is granted, and the matter is remanded for further proceedings including the entry of a monetary judgment and calculation of costs and fees.
The lower court felt “compelled” by the doctrine of stare decisis and the rules of statutory construction (see McKinney’s Cons Laws of NY, Book 1, Statutes § 72) to adhere to the “black-letter rule” enunciated by the Fourth Department in Matter of McDonald (Hutter) (225 App Div 403 [4th Dept 1929]). The Court in McDonald considered whether amendments to Civil Practice Act §§ 1421 (L 1924, ch 513) and 1425 (L 1924, ch 514) allowed a money judgment to be taken against a defaulting respondent for nonpayment of rent without having effected personal service. Previously an action for rent arrears and an action for a warrant of eviction had to be brought in separate proceedings. Additionally, Civil Practice Act § 230 mandated that no money judgment could be taken in any plenary action against a defaulting respondent except where authorized by a court order. The amendment to Civil Practice Act § 1421 allowed substituted service in an eviction proceeding; the revised Civil Practice Act § 1425 permitted an action for a money judgment for nonpayment of rent to be joined with the eviction proceeding. The question then arose whether the legislature intended to authorize money judgments to be taken for nonpayment of rent against a defaulting respondent on less than personal service, except where authorized by a court order, reasoning that Civil Practice Act § 230 now applied, in light of the amendments to sections 1421 and 1425, only to other types of plenary actions.
*687 The McDonald court held that the legislature, in amending Civil Practice Act §§ 1421 and 1425, “did not intend to change the rule requiring personal service of the initiatory process or substituted service by order of the court, or voluntary appearance, for the recovery of a personal judgment” (Matter of McDonald at 406). In doing so, the Court considered those statutes in conjunction with section 230. “In construing such a practice statute, we must, however, if possible, discover the intention of the Legislature as shown by the language of the statute itself viewed in the light of other statutory provisions” (McDonald at 405 [emphasis added]).
Those “other statutory provisions,” and in particular Civil Practice Act § 230, no longer exist.
In 1963, in the wake of a “radically” changed due process landscape (Avgush v Berrahu, 17 Misc 3d 85, 89 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]; see further International Shoe Co. v Washington, 326 US 310 [1945]), the statutory landscape changed as well, as the legislature enacted the Civil Practice Laws and Rules to replace the Civil Practice Act, and in doing so, abrogated Civil Practice Act § 230 entirely. Section 308 of the CPLR (L 1970, ch 851, § 1) allowed jurisdiction to be obtained in a plenary action by means other than personal service and without a court order, doing away with the restriction imposed by Civil Practice Act § 230. The language of Civil Practice Act § 1421 interpreted by the Fourth Department in McDonald was carried over and incorporated into article 7 of the newly-created Real Property Actions and Proceedings Law (see Cornhill v Sposato, 51 Misc 3d at 845 n 4).
Notwithstanding these legislative changes since McDonald was decided, the court below held that the legislature had not “expressly abrogated McDonald’s black letter law regarding the entry of default judgments against tenants in summary nonpayment proceedings” (Cornhill at 845).
This court disagrees. The text of RPAPL 735 is “free from ambiguity and express [es] plainly, clearly and distinctly the legislative intent” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76) to abandon the requirement for personal service in summary proceedings for nonpayment of rent (see further People v Smith, 27 NY3d 643, 649 [2016]). That text is lifted virtually verbatim from section 1421 of the Civil Practice Act, and it allows jurisdiction to be obtained, when read in combination with RPAPL 741 (5) (the successor to Civ Prac Act § 1425), by substituted service in a proceeding for a money judgment, a *688 point by substituted service, a point even the McDonald court conceded. “It must be admitted that the language of the amendment of section 1425 is broad enough to permit the construction urged by the respondent” (McDonald at 405).
Since Civil Practice Act § 230 is no more, and since neither the RPAPL nor the CPLR requires personal service in order for personal jurisdiction to be obtained without a court order, RPAPL 735 is intended to be read alone, not in the light of or in conjunction with any other section, and as read alone, it does not require personal service in an action for money judgment for nonpayment of rent. Thus the holding of McDonald no longer applies and the doctrine of stare decisis is not offended or breached by an interpretation of RPAPL 735 that deviates from the one given to its predecessor statute in McDonald, unencumbered as it is by the looming presence of Civil Practice Act § 230.
In upholding the application of the McDonald rule the lower court cited not only to stare decisis but to considerations of “fairness and equity” and protection of tenant’s rights (Cornhill LLC at 844, 847). A few courts have written that the opposite is true—neither tenant’s rights nor equity are advanced by McDonald (see e.g. Dolan v Linnen, 195 Misc 2d 298, 300 [Civ Ct, Richmond County 2003] [“(t)his peculiar result . . . helps neither honest tenants or landlords nor a unified state court system”]).
Regardless, policy considerations are a “legislative, not a judicial, prerogative” (Arnold v Lyons, 2003 NY Slip Op 50766[U], *11 [Nassau Dist Ct, 1st Dist 2003]).
Nor is due process offended (see Siegel, NY Prac § 575 at 1022 [5th ed 2011]). The demands of constitutional due process are easily satisfied by the notice requirements of RPAPL 735, even though they are somewhat less rigorous than the requirements of CPLR 308. Such differences do not affect jurisdiction, but only the procedures to be followed.
“[U]nder modern conceptions of due process, obtaining personal jurisdiction in a manner consistent with state and federal constitutional standards and with the statutory standards that apply to actions for money in the State of New York should permit the entry of a money judgment in a summary proceeding, regardless of the method of service employed” (Avgush v Berrahu, 17 Misc 3d 85, 91 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]).
*689 Accordingly, jurisdiction in a proceeding under the RPAPL is obtained, for purposes of obtaining a money judgment, when the service requirements of article 7 are met. Compliance having been established here, the lower court is reversed and the case is remanded for entry of a monetary judgment in favor of the petitioner with attorney’s fees, and for any further proceedings consistent with the decision of this court.